## A. J. WRIGHT ET AL.
### v.
## CHICAGO & NORTH WESTERN RAILWAY COMPANY.

*Torts—Fire—Keeping of Oils—Ordinance—Violation of—Storage—Questions for Jury—Evidence—Proximate Cause—Pleading—Variance—Practice—Former Adjudication.*

1. Upon a second trial, after a general reversal, even if the opinion of this court could be considered, its application to part of the case as a former adjudication would have to be clearly made out.

2. Where the declaration charges that an explosion which caused the destruction of the plaintiffs' property, came from petroleum stored in the defendant's warehouse running along the easterly line of plaintiffs' building, and the evidence introduced by the plaintiffs shows that the defendant's warehouse was south of their building, the variance is fatal.

3. An ordinance making it unlawful to store or keep for sale within the city limits any crude petroleum, or to keep any quantity of crude petroleum or refined carbon oil, exceeding one barrel, in any part of a building except the cellar, is violated by a railroad company in keeping in its warehouse for a reasonable time such articles for transportation.

4. The keeping of explosives unsafely guarded in such quantities as to be dangerous to persons and property, in such a place and under such circumstances as to threaten calamity to the persons and property of others, the consequence being an explosion which causes damage to the person or property of another, gives a right of action for such damages as would not have happened in the absence of such explosives.

5. Where a number of causes and results intervene between the first wrongful cause and the final injurious consequence, which are such as might,

with reasonable diligence, have been foreseen, the last as well as every intermediate result is to be considered as the proximate result of the first wrongful cause.

6. In the case presented, it is *held:* That it was a question for the jury whether the damage alleged was the proximate consequence of the act of the defendant in keeping the oils in its building; that evidence tending to prove that the floor of the defendant's building was soaked with oil was improperly excluded; and that the court erred in excluding the plaintiffs' evidence from the jury and in directing a verdict for the defendant.

[Opinion filed August 8, 1888.]

Appeal from the Circuit Court of Cook County; the Hon. Lorin C. Collins, Judge, presiding.

This case was formerly before this court, and the judgment of the court below reversed and remanded, because there was error in sustaining a demurrer to the 10th count of the plaintiffs' declaration. The decision in that case is reported in 7 Ill. App. 438. On the redocketing of the case in the court below the demurrer to that count was overruled. The case again came on for trial before the Circuit Court and a jury, on the 1st, 2d, 3d, 10th and 12th counts of the declaration and pleas thereto. The 1st and 2d counts allege, in substance, that the plaintiffs were the owners and in possession of a valuable building in Chicago, having therein divers goods and chattels; that defendant occupied and used an old one-story frame building, separated from plaintiffs' building by an alley thirty feet wide, running along the easterly line thereof, which defendant used as a warehouse or storage house for freight; that on, to wit, October 9, 1871, the defendant caused to be stored in said frame building a large quantity of crude petroleum, gasoline, etc., which storage was dangerous to plaintiffs' building and contrary to law; that on October 9, 1871, defendant's building took fire and said liquid exploded with great violence, throwing great quantities of burning material upon plaintiffs' building, which was thereby destroyed, as well as the goods and chattels therein contained. The 3d count states the ownership and occupation of the buildings and their relative situation in the same manner; and that defendant took

so little and such bad care of its building that through its neg-
ligence highly dangerous and inflammable material was stored
therein; and on the 9th of October, 1871, in consequence
thereof, an explosion occurred with great violence and with
like results as stated in the 1st and 2d counts.    The substance
of the 10th count is stated in 7 Ill. App. 438.

The 12th count charges the negligent keeping of said in-
flammable and dangerous liquids on the defendant's close for
an unnecessarily and unreasonably long time, and that on Octo-
ber 9, 1871, the same took fire and the flames therefrom
spread so rapidly to the premises, goods and chattels of
plaintiffs that the same were wholly destroyed; that but for
the rapidity with which the flames spread the premises and
goods and chattels of the plaintiffs would not have been
destroyed.

When the plaintiffs' evidence was closed a motion was made
by the defendant to exclude the evidence from the jury, and
instruct them to find for the defendant.    The motion was sus-
tained and the plaintiffs excepted.    Verdict was rendered for
the defendant and the plaintiffs filed their motion for a new
trial, alleging as grounds thereof (among others) that the
court erred in excluding proper evidence offered on behalf of
the plaintiffs, and in excluding from the jury all the evidence
introduced on behalf of the plaintiffs, and in instructing the
jury to find for the defendant.    The motion for a new trial
was overruled, to which the plaintiffs excepted.    Judgment
was entered on the verdict and plaintiffs appealed.

Messrs. GEORGE BURRY, JOHN V. LEMOYNE and LEONARD
SWETT, for appellants.

The defendant is responsible for the natural and probable
consequences of its unlawful or negligent acts.

The maxim, " *Causa proxima et not remota spectatur,*" has
given rise to much discussion and some irreconcilable decis-
ions.    This has been caused mainly by attempts to apply the
maxim to a class of cases where it is not applicable, that is, to
willful or negligent torts.    Broom's Legal Maxims (7th Ed.)
217; Redfield in 13 Am. L. Reg., N. S. 14; Field on Dam-

ages, Secs. 9–13; McDonald v. Snelling, 96 Mass. 290; Weick v. Lander, 75 Ill. 93; Kellogg v. C. & N. W. Ry. 26 Wis. 258, 286.

The loss of the plaintiffs' goods was the natural and probable consequence of the defendant's wrongful acts. The intervention between the wrongful cause and the injurious consequence of the act of a third person does not prevent the consequence being a natural and probable consequence of the wrongful act. McDonald v. Snelling, 96 Mass. 290–6; Wood's Mayne on Damages, *60; Sheridan v. Brooklyn R. R., 36 N. Y. 39; Griggs v. Fleckenstein, 14 Minn. 81; McMahon v. Davidson, 12 Minn. 373; Weick v. Lander, 75 Ill. 93 ; Scott v. Shepard, 2 Black. 892 (Squib case); Illidge v. Goodwin, 5 C. & P. 92; Lynch v. Nurdin, 1 Q. B. 29.

The expression, "The natural and probable consequences," has been paraphrased substantially thus: Those consequences, and those only, are deemed natural and probable, which a person of average sense and knowledge would be expected to foresee as likely to follow. This, however, is not an exact statement of the meaning of the phrase; it is not necessary that the consequence should have been so certain to result that a person of ordinary sense and knowledge could have foreseen that it would result or that it would probably result; it is sufficient if the consequence is so natural and probable that an ordinary person would see that it was liable to result, that is, that it might follow. C. & A. R. R. v. Pennell, 110 Ill. 448; Smith v. R. R., L. R. 6 C. P. 20, 21, 23.

As illustrating generally the meaning of this phrase in cases of this kind, see Scott v. Shepard, 2 Black. 892 (Squib case); Illidge v. Goodwin, 5 C. & P. 192; Lynch v. Nurdin, 1 Q. B. 29; Clark v. Chambers, 3 Q. B. D. 327; Parry v. Smith, 6 C. P. D. 327; Thomas v. Winchester, 6 N. Y. 397; Vandeburg v. Truax, 4 Den. 464; B. & A. R. R. v. Shanly, 107 Mass. 568.

The plaintiffs had in their building twenty-four horses harnessed and bridled, which they were removing as fast as possible, and which, with the number of men working, would have been all taken out in eight minutes. There was no fire in the

plaintiffs' building, but the defendant's building on the other side of the alley was burning. Suddenly by an explosion in the defendant's building, the doors and windows of the plaintiffs' building were burst in and it was filled with smoke and flame; the men were compelled to leave the horses to save their own lives. The explosives were kept in the defendant's building, unlawfully and negligently.

" It should have been left for the jury to determine whether, from the dangerous character of the defendant's business, the proximity to other buildings, and all the facts proved at the trial, the defendant was chargeable with maintaining a private nuisance," or a public nuisance, or was guilty of negligence, and whether the damages sustained by the plaintiffs were the natural and probable consequences of the defendant's wrongful acts. Heeg v. Licht, 80 N. Y. 581; T. P. & W. R. R. v. Pinder, 53 Ill. 421; Fent v. T. P. & W. R. R., 59 Ill. 362.

Messrs. B. C. COOK, W. C. GOUDY and W. B. KEEP, for appellee.

The evidence was uncontroverted that the defendant's building was a depot for receiving and shipping freight. That this was a warehouse for the storage of goods was not only not proven, but was abundantly disproven. There was no evidence tending in any way to prove it. The words warehouse and storing-house for freight have a fixed and settled meaning. Receiving goods for present transportation is one thing, and receiving them as a warehouseman for storing is quite another. Articles received by a railroad company are required by law to be immediately forwarded. The railroad company becomes an insurer of the goods as soon as received. Nothing but the act of God, or of the public enemy, will excuse the carrier if the goods are lost or destroyed. If the goods are received for storage, the care required is only that which an ordinarily prudent man takes of his own goods.

The storing of inflammable goods is far more dangerous than the receiving them for shipment. Goods received by a carrier for transportation must be constantly under the eye of a watchman. The responsibility of the carrier is so great as

to absolutely require this. Goods stored in a warehouse need not be constantly watched, consequently the risk is far greater in the one case than in the other. It is no great inconvenience to keep goods on store in the manner pointed out in the ordinance. But to put every barrel of petroleum in a cellar when received for shipment, and take it out when shipped, would involve great expense in handling. The law does not allow so much for transporting this oil as it does for molasses, for instance. The law provides specific rates of freight for the transportation of carbon oils. These rates are fixed, and published by the railroad commissioners of the State, and prescribe rates from Chicago to every station on defendant's road, and the law compels defendant to ship such oil at the rates prescribed from every station at those rates. (Revised Statute, 810, Sec. 59.) If the defendant was bound to put every barrel so received in a cellar, and take it out, it is manifest that the cost of transporting a car-load of this oil would be double the cost of transporting a car-load of molasses.

The distinction of keeping in store and for other purposes is uniformly taken by the courts. Ins. Co. v. Langdon, 6 Wend. 628; O'Neil v. B. F. Ins. Co., 3 N. Y. 127; Hynes v. Ins. Co., 17 Barb. 119.

A railroad becomes a warehouseman when goods are received at the point of destination and stored. P., C. & St. L. R. R. Co. v. Hollowell, American Law Register, Feb., 1880; Rothschild v. M. C. R. R. Co., 69 Ill. 164; Merchants' D. & F. Co. v. Halleck, 64 Ill. 284; Ill. Cent. R. R. Co. v. Friend, 64 Ill. 303.

" In order to make a defendant liable, his negligence must be the *causa causans*," and not merely a *causa sine qua non;* per Kelly, C. B., in The Lord's Bailiffs of Bomney v. The Corporation of Trinity House, 39 L. J. Ex. 163.

The defendant was a railroad corporation and a common carrier, and bound by the laws covering common carriers.

It is bound to receive all freight offered at any of its stations, and transport the same. It did receive certain barrels of carbon oil in its freight depot. Some of those oils remained

from Friday to Sunday, the day of the fire, but the most of them were received on Saturday, and in the regular course of business would have gone out on Monday morning. On Monday, the 9th of October, 1871, the whole city of Chicago was destroyed by a tornado of fire.

The fact that the injury is a remote result of the act, or in other words, that the injury would not have occurred except for the act, is not enough if some cause other intervened which is the proximate cause of the injury. Wood's Mayne on Damages, p. 69, note.

A distinction is taken by all the courts between a case where the injury is the direct result of the act of defendant, as if the oil had exploded or ignited in the freight house of defendant and thereby caused the burning of the plaintiffs' property, and a case where some other cause has intervened which is the cause of the injury, like the great fire. Toledo, Wabash & Western R. R. Co. v. Muthersbaugh, 71 Ill. 573; Phillips v. Dickerson, 85 Ill. 11; Dubuque Wood and Coal Association v. City and County of Dubuque, 30 Iowa, 183; Daniels v. Balentyne, 23 Ohio St. 532; R. R. Co. v. Kellogg, 94 U. S. 475; Hoag v. Lake Shore & M. S. R. R. Co., 85 Pa. St. 293; Waters v. The Merchants' Louisville Ins. Co., 2 Curtis, 406; Atchison, Topeka & Santa Fe R. R. Co. v. Stanford, 12 Kan. 354, 15 Am. Rep. 362; Nashville & C. R. R. Co. v. David, 19 Am. Rep. 594; Ryan v. N. Y. Central R. R., 35 N. Y. 214; R. R. Co. v. Kerr, 12 P. F. Smith, 353.

Where the accident has arisen in consequence of some unexpected and unusual condition of things which could not have been foreseen, no liability will attach; as, where a railway was impaired by an extraordinary flood, the state of the road being such that it was secure against ordinary floods, in which case it was held that the company were not liable for an injury to a passenger from a misplacement of rails occasioned by such flood. Withers v. The North Kent Ry. Co., 27 L. J. Ex. 417.

So where an act of parliament directed a water company to lay down pipes with plugs in them as safety-valves to prevent the bursting of the pipes, and the plugs were properly made and of proper material, and a severe frost occurring, the plugs

were prevented from acting and the pipes accordingly burst and flooded the plaintiff's cellar, it was held that there was no evidence of negligence against the defendants. Blyth v. The Birmingham Water Co., 11 Ex. 781.

GARNETT, J.    On the first trial of this cause in the court below the evidence of the plaintiffs was excluded from the jury, and a verdict for defendant found by instruction of the court.    In considering this action of the court, we said in our former opinion that the court was divided in opinion as to the question whether it was error to give such peremptory instruction on the evidence introduced.    The defendant now insists that, as there was no new evidence on the second trial, the insufficiency of the evidence to support the 1st, 2d, 3d and 12th counts is *res adjudicata.*    The record shows a general reversal and remanding for error.    The opinion, even if it were proper to refer to it, does not show how the court was divided on the question referred to.    For all that appears in the record or opinion, two of the judges may have thought the ruling erroneous and the third may have dissented.    If there is an adjudication we must be able to make it out clearly.    It is not sufficient that it may be argumentatively inferred.    1 Herman on Estoppel & Res Adjudicata, Sec. 116.

That which is given the effect of a former adjudication in this court, should operate in like manner in the Supreme Court.    The doctrine of that court is, that the opinion of the Appellate Court is no part of the record.    Christy v. Stafford, 123 Ill. 464.

But whether we consider the former opinion of this court or not, an adjudication of the question under consideration is not shown.

The evidence did not tend to support the first three counts. They charged that the explosion which caused the destruction of plaintiffs' property came from petroleum, etc., stored in defendant's warehouse, running along the *easterly* line of plaintiffs' building, while all the evidence introduced on the point showed that defendant's warehouse where the oil was stored, and from whence the explosion is alleged to have pro-

ceeded, was *south* of the plaintiffs' building. That is a fatal
variance. 1 Chitty's Pl. (16th Am. Ed.) 407; The Central
Military Tract R. R. Co. v. Rockafellow, 17 Ill. 541; Disbrow
v. C. & N. W. R. R. Co., 70 Ill. 247; Camp Point Mfg. Co.
v. Ballou, 71 Ill. 417; C. & A. R. R. Co. v. Mock, Adm'x, 72
Ill. 141; T. W. & W. Ry. Co. v. Morgan, 72 Ill. 155.

The tenth count relies upon a breach of the city ordinance,
but counsel for appellee is mistaken in supposing that it alleges
the oil was kept in front of defendant's premises or building.
The decision of this court reported in 7 Ill. App. 438, held
that the tenth count set forth a good cause of action, but did
not decide that receiving the oil merely for transportation,
and keeping the same for a reasonable time for that purpose,
was a violation of the ordinance. The latter question we are
now called upon to decide.

The evidence showed that all the articles which are alleged
to have caused the damage complained of, came into posses-
sion of the defendant, and were kept in its building simply
for the purpose of transportation. Whether the ordinance
applies to such a keeping or storing, must depend on its terms
and the object sought to be accomplished. The first clause of
the ordinance makes it unlawful to *store or keep for sale* within
the city any crude petroleum, etc., exceeding a quantity of five
barrels of forty-five gallons each; the second, to *keep for sale
or on storage* any refined carbon oil, etc., except such as will
stand a fire test of 110 degrees Fahrenheit, etc.; the third, to
*keep* any quantity of said articles exceeding one barrel of
forty-five gallons in any part of a building excepting a cellar,
etc.; the fourth, to *keep* or *store* any crude petroleum, etc., in
front of any building or on any street, alley, wharf, lot or side-
walk, for a longer time than is sufficient to receive in store, or
in delivering the same, provided such time shall not exceed
six hours.

The third clause seems plainly to prohibit the *keeping* by
any person or corporation of more than one barrel, except in a
proper place, to wit, a cellar. There is no exception in the
ordinance in favor of a railroad company keeping the articles
for purposes of transportation. Why should the court intro-

duce such an exception? The oils enumerated are just as dangerous to life and property when in possession of a railroad whose business is to remove it from the city, as in the hands of the shipper.

The fourth clause would seem to indicate that, in using the words *store* and *storage*, the common council did not intend to confine the ordinance to keeping in store for hire. Streets, alleys, lots and sidewalks are not commonly used for storage purposes. If appellee's construction is correct, any quantity of the prohibited articles might be *kept* in an open lot in the city if it was not kept there for sale, and the keeper received no compensation for the keeping. The design of the ordinance was to guard life and property against the dangers incident to the accumulation of large quantities of these inflammable substances in any one place. To permit railroad companies to ignore the ordinance, and take into their freight houses indefinite quantities of such articles, would amount to a practical denial of the protection intended.

The danger is the same whether the keeping is paid for or not, and whether it is kept for sale, exhibition, refining purposes or for hire. To obey this ordinance is, without doubt, an inconvenience to any one not provided with a cellar such as its terms require. Railroads may not be able to comply with the prescribed terms, and make any profit on transporting the oils specified, unless the rates allowed are made more liberal. It may become necessary for the roads to build expensive warehouses within the city limits to insure the safety sought by the ordinance, or to remove the oil from the city as rapidly as delivered, to its warehouses outside of the city. But all these matters are trifles compared to the safety of the public and can have no weight in determining this important question.

The mere act of keeping the oils in its building, although prohibited by the ordinance, gives no right of action to appellants. It is still a question of fact whether the damage alleged was the proximate consequence of such keeping. While, therefore, we decide that the third clause of the ordinance means what it says, and is applicable to all persons and

corporations, yet it will be a question for the jury whether the keeping of the oils was or was not the proximate cause of the injury complained of in the tenth count.

The twelfth count charges upon the appellee negligence in keeping the oil in its warehouse for an unreasonable time. If the defendant could keep in that warehouse any quantity of such oils, no matter how large, and for any period of time, no matter how long, without incurring the imputation of neglect in thus exposing to danger and loss the adjoining property of other persons, it is our duty to say that the evidence did not tend to support the twelfth count. On the other hand, if there was a limit as to quantity and time, it is plainly our duty to leave the jury to find the limit. The evidence tended to show that the oils in the defendant's warehouse at the time of the fire, or a large part of them, had been there from Friday, October 6, to Sunday night, October 8, 1871, awaiting shipment; that they were of a highly inflammable character, exploding with great force at a comparatively low temperature; that the explosion and fire which caused and hastened the destruction of the plaintiffs' property came from the oils, and that, but for this unexpected precipitation of fire upon the plaintiffs' property before there was reason to anticipate its immediate destruction, a large part at least of the personal property could and would have been removed from all danger.

Whether the oils were kept for an unreasonable time depends on the quantity and character of the articles, their liability to cause damages like that complained of, the degree of exposure to explosion of the articles in the place they were kept, the character and condition of the defendant's building, its proximity to the property injured, and upon the force or feebleness of these circumstances the jury should have been allowed to pass.

It is true that one is only answerable for the probable and proximate consequences of a fault and which may be foreseen by ordinary forecast. This rule does not shield defendant. If the evidence is to be believed, the explosion of the oils was a probable and proximate consequence of having them in that inflammable frame building through whose cracks the sparks

falling from any passing locomotive might, at any time, have started a fire.

The danger might have been foreseen by any person of average intelligence. But, to make the defendant liable in damages, it is not necessary that the great fire itself might have been foreseen, nor that the defendant should have anticipated the loss from that particular source; if the circumstances were such that it should reasonably have been aware of the danger from the sparks of an engine, the burning of any other building or structure in that vicinity, or carelessness of any person, this court can not say, as a matter of law, that the oils were not kept an unreasonable time.

This case is distinguishable from Toledo, W. & W. R. R. Co. v. Muthersbaugh, 71 Ill. 573, where the court said: "Had it not been for the high wind prevailing from the southeast, it needs no argument to show the stable would have been in no danger whatever." From the facts in this case, however, we think the jury would have the right to find that appellants, property was in danger all the time defendant used its warehouse for storing explosive oils; not in danger especially from a great conflagration which no one anticipated or could foresee, but from any fire which might, through accident, carelessness or design, come in contact with the explosives. The case of A. T. & S. Fe. R. R. Co. v. Stanford, 12 Kan. 354, well states the doctrine applicable to the facts in the case at bar:

"Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, *and if they are such as might, with reasonable diligence, have been foreseen*, the last result, as well as the first and every intermediate result, is to be considered in law as the proximate result of the first wrong cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, *which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer*, and except for which the final injurious consequence could not have happened, then such injurious consequences must be deemed too remote to constitute the basis of the cause of action."

The words in italics point out the correct distinction; by reasonable diligence, or by the exercise of reasonable intelligence, a great tempest of fire could not have been foreseen, but fire and explosion could and would have been apprehended.

The law requires a man to guard against all dangers that are to be reasonably anticipated; it is a class of dangers that is to be guarded against, and he is not excused because any particular danger within the class could not be foretold. We are content with the rule that the keeping of explosives unsafely guarded, in such quantities as to be dangerous to persons and property, near a frequented street, or other public place, or in the vicinity of the residences or places of business of others, under circumstances that threaten calamity to the person or property of others, the consequences thereof being an explosion of such articles, which causes damage to the person or property of another, gives the latter a right of action to recover from the person keeping the explosives such damages as would not have happened in their absence. Meyers v. Malcolm, 6 Hill, 292; Cooley on Torts, 607.

One guilty of negligence in leaving anything dangerous in a place where he knows it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, is liable in damages if that injury shall be so brought about. Weick v. Lander, 75 Ill. 93; Lynch v. Nurdin, 41 E. C. L. 422.

It follows from what we have said that the court should have permitted the plaintiffs to prove, as they offered to do at the trial, the condition of the defendant's building and the floor thereof, as to its being soaked with oil or otherwise.

For this and the other errors herein indicated the judgment of the court below is reversed and remanded.

*Reversed and remanded.*