HARTON v. TELEPHONE CO.

(Filed May 22, 1906).

*Telephones—Negligence — Proximate Cause — Intervening Act—Question for Jury—Contributory Negligence of Beneficiary of Recovery.*

1. In order to answer an issue as to defendant's negligence "yes," there must have been a negligent act and this negligent act must have been the proximate cause of the intestate's death.

2. In an action against a telephone company for death from the falling of one of its poles, if the jury find that the defendant negligently allowed the pole to remain in a dangerous condition when it was likely to fall and injure persons passing along the highway, and it did fall, blocking the road, and a traveller, in order to clear a passway, replaced the pole so that it later fell and killed the intestate, and this act of the traveler and the resultant injury were events which the defendant might reasonably have expected to occur as a result of its original negligence, in such case the first issue as to defendant's negligence should be answered "yes."

3. There may be more than one proximate cause of an injury, and when a claimant is himself free from blame and a defendant sued is responsible for one such cause of injury to plaintiff, the action will be sustained, though there may be other proximate causes concurring and contributing to the injury.

4. The proximate cause of the event must be understood to be that which in natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which such event would not have occurred. Proximity in point of time or space, however, is no part of the definition.

5. The test by which to determine whether the intervening act of an intelligent agent which has become the efficient cause of an injury, shall be considered a new and independent cause, breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected.

6. Except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could have reasonably expected them to occur as a result of his own negligent act.

7. In an action brought by the father, as administrator of his child, for damages for the negligent killing of his child, if the father at the time of the occurrence was guilty of a negligent act which concurred in causing the injury, and his negligent act was of such character that a man of ordinary prudence could have reasonably expected that the injury was likely to result in consequence of his act, this would be such contributory negligence as would bar a recovery, the father being the beneficiary of the recovery.

Connor and Walker, JJ., dissenting.

Action by H. H. Harton, Administrator of Mary Willie Harton, against Forest City Telephone Co., heard by *Judge W. R. Allen* and a jury, at the August Term, 1905, of the Superior Court of Rutherford.

There was evidence tending to show that defendant had

erected its poles along a highway in Rutherford County. The road hands had worked this particular part of the highway six or eight days prior to the injury, ditching close up to a pole which was rendered insecure and liable to fall. A road hand notified a lineman of the defendant of its unsafe condition some days before the injury, but the matter was not attended to and the pole fell across the road with the lines attached, blocking the road. One Carpenter, going along the road with a wagon, in order to clear the way and enable himself to pass, with the assistance of two others, set the pole back in the hole from which it had fallen, propped it, and left it, as he thought, secure. He testified that with the pole down, vehicles could not pass; that he could not have done otherwise than put the pole back in order to clear the way; could not have pulled it to either side without breaking the wires; that he propped the pole and when he left it, thought it was more secure than before; that soon after, the plaintiff's intestate was passing along the highway and the pole fell and killed her.

Among other instructions, the plaintiff asked the following:

3. "If you should find that the defendant was negligent in leaving the pole standing in an unsafe and dangerous condition, it cannot excuse itself by showing that the pole had already fallen and was replaced by a third person a short time before the fall which injured the plaintiff's intestate, unless you should find that the falling of the pole and its replacement was an unnatural occurrence of an event which would not ordinarily be expected and anticipated by a person of ordinary prudence in the natural and ordinary course of events.

4. "If you should find from the evidence that the pole was rendered insecure and dangerous to the public by the work of the road hands six or eight days previous to the time of the alleged injury; that the pole was upon a public highway;

that the defendant's lineman had notice of its insecure condition, and defendant failed to make the pole secure, which insecurity was dangerous to the public travelling said road, and the injury to the intestate occurred as alleged, then the defendant cannot excuse itself by showing that the pole fell across said road and was placed back in its former position by a traveller in such way as to render it liable to fall again, unless you find that the injury came about in a manner or from causes which defendant might not have reasonably foreseen.

7. "If you find that the pole fell as alleged and did the injury, then the fact that it had previously fallen and had been erected by Mr. Carpenter, as he testified, cannot avail the defendant as an excuse for its negligence, unless you find that the action of Carpenter in re-erecting the pole was not connected with and was not the result of the first fall of said pole."

The court declined to give either of the instructions, and intimated that he would charge the jury as follows:

"If you find from the evidence that the road hands left the pole insecure and in such condition that it could be reasonably foreseen that it would fall in the road, and that it was left in this condition such a length of time that the defendant, by the exercise of ordinary care, could have discovered its condition, or was notified of it a sufficient length of time to enable it to repair, this would constitute negligence on the part of the defendant; but negligence alone does not entitle the plaintiff to recover. There must be negligence, and this negligence must be the real or proximate cause of the injury; if after the negligence of the defendant, there is another cause over which it had no control, which intervenes and is the real cause of the injury, then the negligence of the defendant would not be proximate. If you find from the evidence that the defendant was negligent, and that as a result of this negligence the pole fell in the road, and if you further find from

the evidence that one Carpenter, admitted not to be an agent of the company, raised the pole from the ground and placed it in the hole where it had formerly been, and that thereafter the pole fell and injured plaintiff's intestate, and that the act of Carpenter was the real cause of the injury to intestate, then the negligence of the defendant would not be the proximate cause of the injury, and you would answer the first issue 'no.' This is predicated upon the admission of plaintiff that after Carpenter replaced the pole, sufficient time did not elapse for the defendant to discover that it had been replaced."

Upon the refusal of His Honor to give the instruction as requested, and upon the intimation as to his charge intended, the plaintiff submitted to a nonsuit and appealed.

*Justice & Pless* for the plaintiff.
*McBrayer & McBrayer* and *Justice & McRorie* for the defendant.

HOKE, J. In the charge as proposed, the judge below correctly defined the negligent act alleged against defendant and properly stated that in order to answer an issue as to defendant's negligence 'yes,' there must have been a negligent act, and this negligent act must have been the proximate cause of the intestate's death. In the last part of the charge, however, we think there was error to the prejudice of plaintiff which entitles him to a new trial. The portion of the charge referred to is as follows: "If you find from the evidence that the defendant was negligent and that as a result of this negligence the pole fell in the road, and if you further find from the evidence that one Carpenter, admitted not to be an agent of the company, raised the pole from the ground and placed it in the hole where it had formerly been, and that thereafter the pole fell and injured plaintiff's intestate, and that the act of Carpenter was the real cause of the injury to

intestate, then the negligence of the defendant would not be the proximate cause of the injury, and you would answer the first issue 'no.' This is predicated upon the admission of plaintiff that after Carpenter replaced the pole, sufficient time did not elapse for the defendant to discover that it had been replaced."

The prayers for instruction on part of the plaintiff, while not entirely free from criticism, in that they may be construed as improperly putting the burden of proving the element of proximate cause involved in the first issue, on the defendant, yet they substantially embody the proposition that if defendant negligently left the pole in a dangerous and threatening position, so that it was likely to fall and injure persons passing along the highway, and the pole did fall across the highway and Carpenter, travelling along said highway, in order to clear the same and make a passway, put the pole back in the position from which it had fallen and from which it later fell again and killed the intestate; and the act of Carpenter, with the resultant injury, was one which defendant might have reasonably foreseen as a consequence of his original negligence, in such case, the intervening act of Carpenter would not prevent the primary negligence from being the proximate cause of the resultant injury, and the jury should answer the first issue "yes." In rejecting this principle and proposing the last portion of the charge above quoted, His Honor could by fair interpretation, only have intended, and we have no doubt he did intend, to decide that notwithstanding the fact that defendant may have been negligent, if Carpenter put the pole back in an insecure position from which it was likely to fall and injure one on the highway, and it did so fall and cause the injury, this would so break the sequence of events from the original negligence as to prevent same from being the proximate cause of the injury, and would shield defendant from responsibility; and in this, as stated, we think there was error. Though Carpen-

ter was guilty of negligence in replacing the pole so that it threatened injury and was likely to fall and did fall and kill the intestate, this would not necessarily avail to protect defendant. There may be more than one proximate cause of an injury, and it is well established that when a claimant is himself free from blame and a defendant sued is responsible for one such cause of injury to plaintiff, the action will be sustained though there may be other proximate causes concurring and contributing to the injury. In 21 Am. & Eng. Enc. (2 Ed.), 495, it is said: "To show that other causes concurred in producing or contributing to the result complained of is no defense to an action of negligence. There is indeed no rule better settled in this present connection than that the defendant's negligence, in order to render him liable, need not be the sole cause of plaintiff's injuries." Again on p. 496 it is said: "When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable."

In *Phillips v. Railroad,* 127 N. Y., 657, it is said: "When, in an action to recover damages for injuries alleged to have been caused by defendant's negligence, it appeared that there were two proximate causes of the injury, one the negligence of the defendant, and the other, an occurrence happening without fault on the part of the plaintiff, the latter is entitled to recover." See also *Cartersville v. Cook,* 129 Ill., 152.

The question then recurs for consideration whether, notwithstanding that the act of Carpenter, negligent or otherwise, was the proximate cause of the injury, may not the original or primary negligence have also been the proximate cause?

There are many definitions of proximate cause given in the books all involving the same principle, differing in form, however, in order the better to elucidate and apply the principle to the variant facts of particular cases. That given in Shearman & Redfield on Negligence, sec. 26, may be adopted

as the one best suited to explain the ruling on the facts of
the case before us. "The proximate cause of the event," says
the author, "must be understood to be that which in natural
and continuous sequence, unbroken by any new and inde-
pendent cause, produces that event, and without which such
event would not have occurred. Proximity in point of time
or space, however, is no part of the definition." And Bar-
rows on Negligence, p. 17, in further statement of the doc-
trine, says: "When an independent, efficient and wrongful
cause intervenes between the original wrongful act and the
injury ultimately suffered, the former, and not the latter, is
deemed the proximate cause of the injury." There is no
doubt here that the act of Carpenter intervened and whether
wrongful or otherwise, that it was an efficient cause of the
injury; but was it a new, and, more especially, was it an in-
dependent cause? For this is required before the sequence
of events is broken, and the original or primary negligence
becomes "insulated" and ceases to be the proximate cause.
Speaking of this feature of the definition, Barrows on Neg-
lgence further says: "An efficient intervening cause is a new
proximate cause which breaks the connection with the origi-
nal cause and becomes itself solely responsible for the result
in question. It must be an independent force, entirely super-
ceding the original action and rendering its effect in the cau-
sation remote. It is immaterial how many new elements or
forces have been introduced, if the original cause remains
active, the liability for its result is not shifted. Thus, where
a horse is left unhitched in the street and unattended, and is
maliciously frightened by a stranger and runs away; but for
the intervening act, he would not have run away and the
injury would not have occurred, yet it was the negligence of
the driver in the first instance which made the runaway pos-
sible. This negligence has not been superceded nor oblit-
erated, and the driver is responsible for the injuries result-
ing. If, however, the intervening responsible cause be of

such a nature that it would be unreasonable to expect a prudent man to anticipate its happening, he will not be responsible for damage resulting solely from the intervention. The intervening cause may be culpable, intentional or merely negligent." To the same effect Shearman & Redfield, sec. 31 and 34, speaking further of the intervening cause in section 31: "In the first place the causal connection must be actually broken, the sequence interrupted in order to release the defendant from responsibility. The mere fact that another person concurs or co-operates in producing the injury or contributes thereto in any degree, whether large or small, is of no importance. * * * It is immaterial how many others had been at fault if the defendant's act was the efficient cause of the injury." And in section 34: "If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another. If it could not have been thus anticipated, then the intervening negligent person is alone responsible." A like doctrine is laid down in 1 Thompson, Commentaries on the Law of Negligence, sections 47 to 85 inclusive, giving various instances of its application.

It will be seen that the test laid down by all of these writers, by which to determne whether the intervening act of an intelligent agent which has become the efficient cause of an injury, shall be considered a new and independent cause,

breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected. If the intervening act was of that character, then the sequence of events put in motion by the primary wrong is not broken, and this may still be held the proximate cause of the injury. Numerous and well considered decisions by courts of the highest authority show that this is a correct statement of the doctrine. *Insurance Co. v. Boon,* 95 U. S., 117; *Railroad v. Kellogg,* 94 U. S., 469; *Gas Co. v. Ins. Co.,* 158 Mass., 574; *Lane v. Atlantic Works,* 111 Mass., 136; *Wright v. Railroad,* 27 Ill. App., 200.

In *Insurance Co. v. Boon, supra,* the court says: "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster. A careful consideration of the authorities will vindicate this rule." In *Lane v. Atlantic Works, supra, Colt, J.,* delivering the opinion, says: "In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged, but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in

the number of subsequent events and agencies which might arise." And at page 144, this opinion further declares that "It was immaterial whether the act of Horace Lane (the intervening agent) was mere negligence or a voluntary intermeddling. It was an act which the jury have found the defendants ought to have apprehended and provided against."

In *Clark v. Chambers,* 19 Eng. Ruling Cases, 28, on facts not dissimilar to those of the case before us, it was held that the primary negligence of the defendant was the proximate cause of the resultant injury, as a matter of law. In that case, a defendant had partially and wrongfully obstructed a private carriage way by placing a barrier thereon armed with spikes—commonly called a *chevaux de frise;* some one, without authority from the defendant, removed the obstruction from the driveway and placed the same in a footpath near by, and one going along the footpath on a dark night was injured by the removed barrier. Held, as stated, that as a matter of law the original wrong was the proximate cause of the injury.

While this decision is deserving of the greatest consideration, the opinion itself suggests that there are cases which declare the law as we now hold it, and we think it the more correct rule that, except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act, and we hold that the question on the phase of the case presented by these prayers for instructions should be submitted under a charge substantially embodying this position: that if the jury find the defendant, in breach of its duty, negligently allowed the pole to remain in a dangerous condition where it was likely to fall and injure one on the highway, and it did fall, blocking the road, and Carpenter, in order to clear a passway, replaced the pole so that it later fell and killed the intestate, and this act of Car-

penter and the resultant injury were events which the defendant might reasonably have expected to occur as a result of its original negligence, in such case, the first issue should be answered "yes" with such other positions as the testimony may require.

In regard to the issue of contributory negligence, there seems to have been no testimony in the former trial of any contributory negligence on the part of the intestate. In this connection, however, attention is called to the decision in *Davis v. Railroad,* 136 N. C., 115, in which it is held that if there was contributory negligence on the part of the plaintiff, who is father and next of kin of the intestate, the same would be available as a defense to the extent of his interest. If the father at the time of the occurrence was guilty of a negligent act which concurred in causing the injury, and his negligent act was of such character that a man of ordinary prudence could have reasonably expected that the injury was likely to result in consequence of his act, this would be such contributory negligence as would bar a recovery.

No opinion is expressed on the testimony, as it may not on this point have been set out with a view to present the question. There is error and a new trial is awarded.

New Trial.

BROWN, J., concurring in result: I am not now prepared to hold against the rulings of *Judge Allen* in this case, but before determining whether the intervention of Carpenter "insulated" the alleged negligence of the defendant, I prefer that the jury should pass on all the issues, and therefore consent to a new trial. I agree that it would have been better had the trial proceeded and a voluntary nonsuit not been taken. If that had been done, the entire case would have been before us, and all rulings excepted to duly considered. If it should be found that Carpenter propped the pole up with a rotten or insufficient prop so that it broke and fell, or

that he placed the prop so far out that it was knocked out of place by the wheel of the buggy, or that he otherwise did the work in so negligent a manner that the pole fell on the intestate in consequence of his negligence, I should have no difficulty in holding Carpenter's act the immediate cause of the injury and that the defendant would not be liable.

Again, I think there is evidence of contributory negligence upon the part of the intestate. The plaintiff may be the beneficiary of a recovery and come within the ruling in *Davis' case,* 136 N. C., 115. Upon the whole I think it best to order a new trial, to the end that the jury may pass on all the issues.

CONNOR, J., dissenting: As this case goes back for a new trial, I do not care to discuss several of the interesting and difficult questions presented upon the record. I simply wish to say that I do not think plaintiff's prayers for instructions could have been properly given, and that the instruction proposed to be given by His Honor was correct. The plaintiff should have proceeded with the trial and not have taken a voluntary nonsuit. In the light of the evidence, the sole question was whether the negligence of defendant was the proximate cause of the injury—and this His Honor proposed to submit to the jury. After correctly defining the measure of defendant's duty in regard to securing the pole, after being notified of the dangerous condition in which it was left by working the road followed by the rains, His Honor said: "If you further find from the evidence that one Carpenter, admitted not to be an agent of the company, raised the pole from the ground and placed it in the hole where it had formerly been, and that thereafter the pole fell and injured plaintiff's intestate, then the negligence of the defendant would not be the proximate cause of the injury." This, I think, a correct instruction. It must be conceded, I respectfully submit, that if Carpenter's act was the real, which

is synonymous with proximate, cause of the injury, then the preceding and exhausted negligence of defendant could not be also and at the same time the real (proximate) cause thereof. It must be conceded that expressions may be found as cited by *Mr. Justice Hoke,* in which the existence of two proximate causes are recognized, as causing an injury. I must confess my inability to understand how two independent causes, acting and operating entirely independent of each other, can both be said to be the proximate cause of one injury. In a certain sense every event is the result, culmination of every precedent event, but for practical purposes, in the affairs of human life, there must be a limit found somewhere when the causal connection between events cease to be recognized for the purpose of fixing liability, otherwise we run into abstractions of the schoolmen and convert the courts into academies for speculation. I fully comprehend how two or more concurrent causes may co-exist and co-operate, but in the domain of practical jurisprudence before a legal liability can be fixed, a point must be reached at which, either as a legal conclusion or by the verdict of the jury, the ultimate *causa causans* is reached. In the case put by Mr. Barrows, cited in the opinion, as in all of the cases which I have examined, the negligent act, as leaving the horse unhitched in the street, was a continuing act of negligence, the dangerous consequences of which could be clearly foreseen. This is well illustrated by the decisions of this court in *Greenlee's case,* 122 N. C., 977, and *Troxler's case,* 124 N. C., 189, in which it was held that the failure of the railroad company to provide safety appliances was negligence *per se,* and because continuing up to the moment of the injury and from long and uniform experience known to be imminently dangerous to human life it was treated, in the language of the court, as the *"causa causans* of the injury," excluding the defense of contributory negligence. It is nowhere suggested that the negligence of the defendant in not furnishing

the appliances and that of plaintiff in undertaking to do the work without them, were both proximate causes. This, it was evident to the court, would be to destroy the landmarks defining the doctrine of contributory negligence. Whatever may be thought of the scientific accuracy of the doctrine of continuing negligence, it is well settled, with its limited application, in our jurisprudence. It simply excludes the defense of contributory negligence by treating the defendant's continuing negligence as the proximate cause of the injury. In the same way many cases may be found in the books wherein it is held that if one leave a dangerous object in the highway, under such circumstances that a reasonably prudent man would foresee that persons passing would interfere with it, causing injury, the original negligent act is treated as the proximate cause of the injury. In all of these cases the negligent act was continuing at the time of the interference. In *Milwaukee, etc., R. R. v. Kellogg,* 94 U. S., 469, a well considered and uniformly approved opinion, it is said: "The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is of difficult application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are, in all cases, to be chargeable to the misfeasance or non-feasance. They are not where there is a sufficient and independent cause operating between the wrong and the injury. In

the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are natural or probably connected with each other by a continuous sequence or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

In this case, the pole was down and across the road; the negligence of defendant had spent its force, was exhausted. For any injury sustained by a traveller by reason of its being across the road, defendant was liable. Carpenter came along and undertook to replace it. In such condition *Mr. Bishop* says: "The inadequate, remote cause, which is not sufficient to charge the party, we may define to be one which has so far expended itself, that its influence in producing the injury is too minute for the law's notice; or a cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof. If after the cause in question has been in operation, some independent force comes in and produces an injury, not its natural or probable effect, the author of the cause is not responsible." Non. Con. Law, 43. This, I think, is the law applicable to this case, the question of fact being for the jury. I am unable to foresee where the doctrine of double or, possibly, triple proximate cause will lead us. It will become necessary for either the court or the jury to find which of the several proximate causes is most or nearest proximate to the injury—ultimately leading to the generally rejected doctrine, save in admiralty, of comparative negligence. In recognizing several proximate causes when inquiring into defendant's negligence, it must follow that the same principle must be carried into the inquiry in regard to plaintiff's negligence producing, I respectfully submit, additional confusion and uncertainty into a domain sufficiently beclouded with contradictory theories, abstract

speculations and confusing terminology. I think it much safer to keep in view, and be governed by, the wise maxim *via antiqua via est tuta*.

WALKER, J., concurs in the dissenting opinion.