SALLY KING, Respondent, *v.* SIX NINETY AND TWO REALTY CORPORATION, Appellant, Impleaded with NEW YORK TITLE AND MORTGAGE COMPANY and Another, Defendants.

Supreme Court, Appellate Term, First Department, November 28, 1934.

*E. C. Sherwood* [*Ralph H. Terhune* of counsel], for the appellant.

*Edward Carey Cohen,* for the respondent.

CALLAHAN, J. On January 2, 1934, the plaintiff was injured while visiting premises 1049 Sixth avenue, New York city, owned by appellant Six Ninety and Two Realty Corporation. In 1932 the owner had executed an assignment of rents to defendant New York Title and Mortgage Company, which had gone into possession and control through its agent. On December 15, 1933, the title company had assigned the rents to the United States Trust Company (not a party) which had in turn taken possession and control of the premises. The assignment to the title company provided among other things that the assignee might take possession, make repairs, execute leases, collect rents, and exercise all the powers and functions of an owner. The rents collected were to be applied to expenses

in such order as the assignee might determine, the balance of the rents to be applied on the mortgage debt. The assignee's possession was to continue until all arrears due under the mortgage were discharged. It was thus possible that the assignee's possession might continue indefinitely. Its right to continue in possession was apparently irrevocable as far as the assignor was concerned.

The lack of repair, on which the charge of negligent injury of the plaintiff was based, was a condition arising while one of the assignees was in control of the premises. Nevertheless, the owner, who had surrendered possession and control a year and a half previously, has been held liable.

The property was a multiple dwelling within the meaning of the Multiple Dwelling Law. Section 78 of that law provides:

"§ 78. Repairs. Every multiple dwelling and every part thereof shall be kept in good repair, and the roof shall be kept so as not to leak and all rain water shall be so drained and conveyed therefrom as to prevent its dripping to the ground or causing dampness in the walls, ceilings, yards or areas. The owner of such multiple dwelling shall be responsible for compliance with the provisions of this section; but the tenant also shall be liable for every violation of the provisions of this section if such violation is caused by his own wilful act or negligence or that of any member of his household or his guest."

The question presented is whether "owner," as used in this section, means the owner of the fee, or the one in possession and control, exercising the usual functions of an owner. I construe it to mean the latter. Otherwise the statute must be held to mean that the owner of the fee is liable for a condition arising after he has divested himself of control and an opportunity to repair. Though he might not even have right of access to the premises he would remain responsible for their condition.

I think that the portion of section 78 which provides that a tenant is also liable for violations caused by his willful act or negligence, refers to a tenant of a portion of the premises and not to a lessee of the whole premises. The latter would assume the broader liability of an "owner."

That "owner" may mean lessee or other person in control would seem to be indicated by the provisions of section 325 of the Multiple Dwelling Law. The section, though headed "Registry of owner's name," refers, in the body thereof, to lessees of the whole house, showing that at least in this instance "owner" was used in the broader sense.

Such authority as I have been able to find would seem to justify this construction. In *Altz* v. *Leiberson* (233 N. Y. 16) the Court of

Appeals expressly left open the question as to whether a lessee of the whole premises would be deemed an " owner " under the Tenement House Law. In *Williams* v. *Ut* (122 Misc. Rep. 787) it was held at Special Term of the Supreme Court that such a lessee would be deemed an " owner " under that statute. A similar holding appears to have been made in *McGowan* v. *Morgan* (160 App. Div. 588). The learned justice who wrote the prevailing opinion said in the last case: " I think the term ' owner ' in section 76 was intended to describe the person who was in such possession or control as proprietor, of all or part of the premises, as to cast upon him the duty to light and care for the common hallways." Though the use of the phrase " as proprietor " might indicate that the court was limiting its decision to one in possession and control as owner of the fee, we do not think that " proprietor " was used in that sense. There was no proof in the case that the defendant was the owner of the fee. The views expressed in the dissenting opinion indicate rather that the prevailing opinion was based on a holding that " owner " meant the one in possession and control exercising the usual functions of a proprietor or owner.

While, of course, the legal status of a lessee of the entire premises would not be identical with that of an assignee of the rents who was in possession of the premises as the nominee of a mortgagee, we see no essential difference between the possession of such persons as affecting the question of liability for failure to repair. Such an assignee would not be in possession as a mere agent of the assignor. Whether he be deemed a trustee as to the rents collected, as was the assignee in *Metropolitan Life Ins. Co.* v. *Childs Co.* (230 N. Y. 285, 288), or whether he be deemed to have greater rights with respect to those rents, as appears to be the case here, in so far as his possession and control of the premises are concerned, he is clearly not a mere agent of the owner. He is serving his own or the mortgagee's interests primarily. His possession would be that of the mortgagee, not that of the assignor.

Of course, the granting of authority to the assignee to make repairs did not amount to a covenant on the latter's part to repair, but we are not testing the question of liability on contract but rather liability for tort for failure to obey a statutory mandate.

Ordinarily, in the absence of statute, liability for injuries suffered by a visitor arises from occupancy, not from ownership of real property. An owner who has parted with possession and thus lost the opportunity to exclude or invite visitors cannot be held liable if a visitor is injured. (*Potter* v. *N. Y., O. & W. Ry. Co.*, 261 N. Y. 489.) Of course, this rule may be modified by statute. But before a statute should receive a construction that would impose

continuing liability on one who has separated himself entirely from possession and control, it must be clear that such is its mandate. Here it is at least open to doubt as to whether that construction was intended by the Legislature and, under the circumstances, a reasonable interpretation should be applied. It is true that this is a remedial statute and that the law should be liberally construed in favor of the persons it was intended to protect, who, we will assume, include injured visitors. It is impossible, however, to determine which construction of the word " owner " would ordinarily afford greater security to such injured visitors. Economic conditions and even personal financial ability might vary.

We hold that the appellant, having parted with possession and control long before the condition complained of arose, was not the one contemplated in the statute when it imposed liability on the " owner " for lack of ordinary repairs.

In view, however, of the importance and doubtful nature of the question involved, leave will be granted to appeal to the Appellate Division.

Judgment reversed, with thirty dollars costs, and complaint dismissed on the merits, with costs, with leave to respondent to appeal to the Appellate Division.

Lydon, J., concurs: Shientag, J., dissents.

Shientag, J. (dissenting). I dissent. The appellant Six Ninety and Two Realty Corporation, owner of the multiple dwelling referred to in the complaint, defaulted in the payment of interest and taxes under certain mortgages, payment of which had been guaranteed by the defendant New York Title and Mortgage Company. In March, 1932, appellant assigned to the guarantor the leases of the mortgaged premises and gave it full management and control thereof. The instrument provided, among other things, that the assignee was to maintain the premises and keep same in repair, and that the assignment was to be without prejudice to the right of the assignee to commence proceedings for the foreclosure of the mortgage. It was further provided that upon payment of all arrears together with the insurance premiums, taxes and all expenses " this instrument shall cease, determine and come to an end."

January 2, 1934, after the guarantor had taken possession under the assignment, plaintiff, a visitor to one of the tenants in the building, was injured as a result of negligence in the maintenance of the public stairway in the premises, and from the judgment entered in her favor against the defendant owner the latter appeals. The negligence complained of took place while the assignee was in possession of the premises.

For the reasons stated in Justice CALLAHAN's opinion — that the word " owner " in section 78 of the Multiple Dwelling Law means not the owner but the one in possession and control exercising the usual functions of an owner — my associates have concluded that the judgment must be reversed and the complaint dismissed.

On the facts presented by this record I do not agree with that construction of the statute.

By section 78 the " owner " is made responsible for failure to keep the multiple dwelling and every part thereof in good repair.

The guarantor went into possession neither as an owner nor as lessee; its possession and management, resulting from the owner's default in performance of its obligations under the bonds and mortgages, was for the mutual benefit of both parties under the conditions prescribed in the assignment; and while the party in actual possession would, in this instance, be answerable under common-law principles for negligence in the operation of the premises, such liability is distinguishable from that imposed by the statute against the owner. It seems to me that the owner cannot plead in defense that because the injury here resulted from the failure of the assignee to keep the premises in repair, the statute is a dead letter with respect to the owner.

We find a similar remedy given by section 59 of the Vehicle and Traffic Law, which makes the owner of an automobile liable for injuries sustained by reason of the negligence of any person operating the car with the owner's permission. That statute does not provide that the statutory liability of the owner shall be in addition to the common-law liability of the operator of the car, yet it has never been questioned that either or both may be liable, the one solely by virtue of the statute, the other by common law.

In the practical operation of the statute the obligation imposed on the owner may not be so onerous as it seems at first sight, for the owner may in every case have a right to indemnity as against the active wrongdoer. (*New York Consolidated R. R. Co.* v. *Mass. B. & Ins. Co.*, 193 App. Div. 438; affd., 233 N. Y. 547; *Birchall* v. *Clemons Realty Co., Inc.*, 241 App. Div. 286.)

The judgment should be affirmed.