The appellant Louis Adler was convicted in the Second Criminal Court of the City of Newark for violation of section 443 of Newark's Building Code and was fined the sum of $50; he appealed to the Essex County Court which, after finding him guilty, entered judgment for the penalty of $50; he now appeals to this court from the judgment of the County Court.
The parties entered into a stipulation of facts before the County Court. This disclosed that on June 26, 1934, the City of Newark acquired certain Market Street premises at public tax sale and duly recorded the tax certificates of sale in accordance with Title 54 chapter 5. In July, 1944, the appellant, as record owner of the premises, conferred in the Department of Revenue and Finance of the City of Newark with Mr. Hess, described as Deputy Mayor, Mr. James Byrne of the Supervisor Comptroller's Office, and Mr. Martin, an employee of the city, with respect to the surrender of the premises to the city. A short memorandum was drawn which stated that the appellant desired to give the property to the city and that he *Page 233 
would sign whatever papers were necessary. No further papers were ever prepared, but the appellant was advised by Mr. Hess that the transaction was complete "in so far as he was concerned and that the signing of the papers being a mere formality, he had nothing to worry about."
On July 10, 1944, the city "entered into full possession and control of the premises, exercised full dominion and ownership, collected the rents, made repairs, insured the premises and did everything under the circumstances that an owner would do." In December, 1947, a fire occurred which did considerable damage to the premises. On May 17, 1948, summary proceedings were instituted by the city in the Second Criminal Court for violation of section 443 of the Building Code which reads as follows:
"Section 443. Condemned Buildings.
"I. Buildings or other structures which shall be unsafe so as to endanger life and limb shall immediately, upon notice from the Superintendent of Buildings, be made safe and secure, or taken down, and when the public safety requires immediate action, the Superintendent may forthwith enter upon the premises with such assistants as may be necessary and cause the said structure to be made secure or taken down at the expense of the owner or party interested."
The stipulation between the parties states that the "question to be determined is, `Is Louis Adler the proper person to have been charged with maintaining the nuisance and with violating the City Ordinance?'"
Unfortunately, the record before us is entirely silent as to what, if anything, transpired between the date of the fire and the institution of the summary proceedings. Admittedly, the city took over the premises in 1944, was still in possession and control at the time of the fire in December, 1947, and, in so far as the record of the proceedings either before the Second Criminal Court or the County Court indicates, never took any formal action thereafter to divest itself of possession and control. We believe that the appellant is, therefore, entitled to the benefit of the present assumption that, in legal contemplation, the city's possession was still in effect at the time of the institution of the summary proceedings. *Page 234 Cf. Atlantic City v. Turner, 67 N.J.L. 520, 522 (Sup. Ct.
1902). See Wigmore, Evidence (3rd ed. 1940), § 437.
The issue presented is whether, under the circumstances, the appellant's interest in the premises was such that he was, within the intendment of section 443 of the Building Code, under obligation to repair or remove the structure damaged by fire. It is the appellant's contention that he no longer had any interest whatever in the premises. On the other hand, the County Court determined that his right of redemption continued and that he "must be considered the owner within the contemplation of the ordinance."
Assuming that the right of redemption remained in full force and that the city's conduct did not in "good conscience" (seeStandard Oil Co. v. City of Newark, 127 N.J. Eq. 106, 109
(E. A. 1940)), bar it from seeking to transfer responsibility to the appellant, the question remains whether section 443 imposed the duty of repairing or removing the dangerous structure upon the holder of the right of redemption despite the fact that possession and control had actually been surrendered to and continues in the city. At common law responsibility for a nuisance on land rested ordinarily with the person in possession and control at the time of its creation and continuance. SeeBoard of Health v. Eastlack, 68 N.J.L. 585 (Sup. Ct. 1902);Ingwersen v. Rankin, 47 N.J.L. 18 (Sup. Ct. 1885); affirmed, 49 N.J.L. 481 (E. A. 1887). See Ahern v.Steele, 115 N.Y. 203, 22 N.E. 193 (Ct. of App. 1889), where the court stated that "It is not the general rule that an owner of land is, as such, responsible for any nuisance thereon. It is the occupier, and he alone, to whom such responsibility generally and prima facie attaches." And while it is clear that a statute or ordinance may impose responsibility on the owner even though exclusive possession and control be vested in another, the question is always present as to whether such was its intent. Cf. King v. Six Hundred Ninety and Two RealtyCorp., 153 Misc. 619, 275 N.Y.S. 753 (App. Div. 1934), where the court construed a New York statutory provision imposing liability upon the "owner" for keeping a multiple dwelling *Page 235 
in good repair to mean "the one in possession and control, exercising the usual functions of * * * an owner." But seeWeiner v. Leroco Realty Corp., 279 N.Y. 127, 17 N.E.2d 796
(Ct. of App. 1938).
The language of section 443 is not particularly helpful although it recognizes that the responsibility may be that of an owner or other "party interested." The harshness of a construction which would impose responsibility on the holder of a right of redemption notwithstanding that the city had actually taken and continues in possession and control is well illustrated by the facts before us. The appellant has had nothing whatever to do with the property since 1944. On the other hand, the city has, since that time, exercised every function of ownership. Its possession and control have been exclusive and uninterrupted, it received all income, made all repairs, insured the premises, and has either collected or is endeavoring to collect the insurance. We believe that a fair and reasonable construction of section 443 supports the conclusion that in view of the particular facts presented, including the sale of the premises for nonpayment at public tax sale, the city's acquisition of the property and its exclusive possession and control for several years and the occurrence of the fire during the city's possession and control, the holder of the right of redemption was not under obligation thereunder to repair or remove the damaged structure while such possession and control of the city continued.
The judgment below is reversed. *Page 236