Abraham Schlissel, J.
In this contested summary proceeding the issue litigated is whether .the affected premises are subject to rent control or are decontrolled as alleged in the notice dated March 18, 1959 and attached to the petition herein.
Resolution of that issue depends in turn upon the question whether said premises (141 East Hudson St.) are, as claimed by landlord, a two-family house or a three-family dwelling as contended by tenant.
*517 At the outset landlord must, in order to prevail in his contention, overcome the impact of an order of the Temporary State Housing Bent Commission dated October 30, 1958 and holding that as of September 24, 1957, the apartment occupied by tenant was subject to control and that the maximum permissible rent therefor was $80 a month. A protest of said order was denied and same affirmed by the State Bent Administrator by his order dated February 13, 1959.
As the Appellate Term, Second Department said in Colman v. Kinsella (Feb. 1957 Term), originally decided by my late colleague, Judge Glantz: “The trial Court was bound to accept the Local Bent Administrator’s order of November 28, 1955 which fixed the maximum rent for the tenant’s apartment and implicitly found that the premises were subject to rent control. ’ ’
Here, as in the Colman case, the Local Bent Administrator’s order of October 30, 1958 fixing the maximum rent for this tenant’s apartment “ implicitly found that the premises were subject to rent control ”. Here, as there, this court was bound by said, order and by each and every finding implicit therein.
This conclusion would make inevitable dismissal of the petition herein on the authority of the cited and quoted case.
Assuming, hoAvever, that this Avere a matter of first impression this court would reach the same result.
It seems to the court that the true test of the character of these premises is to be found in their availability rather than in their alleged status under the building and zoning laws.
Thus tested it cannot, this court belie\res, be doubted that this is a “ multiple dwelling ” and not a “ two-family house ”.
Section 4 of the Multiple Besidence Law, the provisions of which are effective in this city, contains the folloAving definitions:
33. “ ‘ Multiple DAvelling. ’ A dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the temporary or permanent residence or home of three or more families living independently of each other ”.
35. “ ‘ Occupied ’ or ‘ Used ’. Such terms shall be construed as if followed by the words ‘ or arranged, designed, or intended to be occupied or used ’. ’ ’
If we read subdivision 33 in the manner mandated by subdivision 35, we must then conclude that a multiple dwelling is one which is ‘1 arranged, designed, or intended to be occupied or used ” as the temporary or permanent “ residence or home of three or more families living independently of each other ”.
On the basis of the foregoing definitions it cannot be doubted that the house at 141 East Hudson Street is a multiple dAvelling *518 and not a two-family house for it is, concededly, arranged, designed and intended to be occupied or used as the residence or home of three families living independently of each other.
It appears without contradiction (and was, indeed, stipulated) that this building is equipped with all the facilities necessary to permit three families to live therein independently of each other. For example, it contains three kitchens in each of which there is a separate sink and a separate range. None of the three apartments is lacking in anything required to maintain a family in complete self-reliance.
The court, therefore, concludes on both reason and authority that the demised premises are controlled and that the landlord has failed to sustain his contention that they are ‘ ‘ decontrolled pursuant to Emergency Housing Rent Control Law ” because allegedly situated in a two-family house (Landlord’s notice dated March 18, 1959).
It seems to the court that any other conclusion could only result in absurdity suggesting, as it necessarily would, that this building was possessed of chameleon-like qualities enabling it to change, at landlord’s will or whim, from a controlled three-family dwelling to a decontrolled two-family house.
The landlord is, of course, possessed, of a simple remedy for the dilemma in which he now finds himself. He need only remove the third-floor kitchen and he will, it seems to the court find find himself possessed of a legal and decontrolled two-family dwelling.
It therefore follows that tenant is entitled to a final order dismissing the petition herein on the merits. x
There remains for consideration only tenant’s counterclaim for overcharge and for counsel fees.
The order of October 30, 1958 fixes the maximum rent of tenant’s apartment at $80 per month as of September 24, 1957 the effective date of the lease.
Said lease provides for a monthly rent of $115 and it appears without contradiction (and was indeed stipulated) that landlord accepted said rent from tenant from September, 1957 through September, 1958, a period of 12 months.
The overpayment computed at $35 per month thus amounted to a total of $420.
Landlord concedes, in effect, liability for this overpayment arguing only that tenant’s counterclaim therefor and for counsel fees is premature because of pendency of an article 78 proceeding seeking review and reversal of the order of February 13, 1959.
It seems.to the court that landlord’s contention in this regard is wholly without merit. The court knows (and has been referred *519 to) no rule, statutory or decisional, staying award of a judgment for excess rent and incidental counsel fees merely because an article 78 proceeding has been instituted. Landlord’s remedy, if any there be, must in any event be sought in the Supreme Court and not here. Furthermore, landlord may recoup any payment made by him pursuant herein if the Bent Commission’s order should eventually be reversed. It must, however, not be overlooked that landlord’s memorandum concedes the existence of control from September, 1957 through September, 1958. In these circumstances the court is unable to perceive on what basis landlord hopes t¡o avoid payment of these overcharges.
Equally unable is the court to follow landlord’s claim that he did not stipulate that $350 represents the reasonable amount of tenant’s counsel fees. Both the record and the court’s clear recollection confirm that landlord’s attorney stipulated during the trial that any award to tenant 'should include counsel fees of $350. The present effort to suggest otherwise does not impress itself favorably upon this court.
In any event, and the stipulation aside, the court is convinced and finds as a fact that the services of tenant’s attorney were reasonably worth $350 which it now awards to tenant.
After careful search of its conscience, the court has concluded that it must deny tenant treble damages for the $420 overcharge. On the contrary the tenant is expressly limited to. a single recovery.
Accordingly, judgment is directed in tenant’s favor on his counterclaim for the sum of $770 ($420 overcharge and $350 counsel fees) together with appropriate interest and costs.
Let a final order and judgment embodying this decision be submitted promptly.