Robert TORRES, Plaintiff,

v.

UNITED STATES of America,
Defendant and Third-Party
Plaintiff,

v.

Alvin R. FULLER and Jane Fuller,
Third-Party Defendants.

No. 68–C–743.

United States District Court,
E. D. New York.

Nov. 14, 1969.

Affirmed 2d Cir. March 25, 1971.

Edward R. Neaher, U. S. Atty., E.D. N.Y., Brooklyn, N. Y., Steve C. Arniotes, Asst. U. S. Atty., for defendant and third party plaintiff.

Hochman & Glover, Brooklyn, N. Y., for plaintiff.

The third-party defendants did not appear in the action.

*Memorandum of Decision and Order*

MISHLER, Chief Judge.

This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), based on a claim of negligence on the part of the Government in failing to inspect and/or maintain a stairway at premises 123–20 Grayson Street, Springfield Gardens, in the Borough of Queens, City and State of New York. The case was tried to the court without a jury.

On May 19, 1967, plaintiff was in the employ of Canarsie Outlet Sales Corp. He arrived at 123–20 Grayson Street with a truckload of furniture, consisting of a dining room set, a living room set (sofa and two upholstered chairs) and two bunk beds with springs and mattresses for a customer by the name of Harris. He was directed to deliver the furniture to the basement of the premises. He stepped on the third step down the stairway. The tread was dislodged and fell away. The plaintiff was precipitated to the floor beneath the stairway and sustained injury.

The Government acquired title to the premises on March 25, 1966 through a Referee's deed in a state foreclosure action. At that time, the prior owner, a Mr. Cooper, occupied the first floor and basement. The second floor was rented to a tenant. The premises were occupied as a two family house. An area of the basement contained a sink and a refrigerator.

The Government removed Mr. Cooper from the premises on or about October 3, 1966. The premises became completely vacant. The Government, at that time, made a complete inspection of the building, including the stairway. The stairway inspection consisted of a visual examination and the use of the stairway by walking up and down the steps to determine if they were firm. The inspection of the stairway was properly performed and revealed no defects. The Government's agent had occasion to examine the stairway a number of times while the house was vacant and such

further inspections revealed no defects. The last such examination occurred immediately prior to the execution of a contract of sale on December 29, 1966.

The premises remained vacant until December 29, 1966. On that day, the Government, by the Administrator of Veterans' Affairs, entered into an installment contract of sale with third-party defendants, Alvin R. Fuller and Jane Fuller. The purchase price was $22,500, payable $750.00 upon execution and delivery of the agreement and the balance of $21,750 in constant monthly installments of principal and interest in the sum of $130.42 each "until such principal and interest shall have been fully paid." The Buyer agreed to pay the expenses usually paid by an owner of premises, i. e., taxes, assessments, water rates, fire insurance premiums. Under the terms of the contract, the Buyer agreed to keep the property in good repair [1] and the Seller reserved the right to inspect the premises "for the purpose of protecting Seller's right, title and interest in and to the property." [2]

Under the contract, the Buyer is entitled to a deed to the property upon payment of the sum of $16,875.00, the difference between the sum paid and the purchase price to be paid by delivery of a purchase money mortgage. Until delivery of the deed, the relationship established by the terms of the contract was that of landlord and tenant, the Buyer occupying the premises as a tenant from month to month.[3]

1. Paragraph "8" of the Installment Contract for Sale of Real Estate reads as follows:

8. Buyer covenants not to commit, permit, or suffer any waste to the property, to keep the property in good repair and not suffer any mechanics' or material men's liens to attach thereto. Buyer further covenants not to abandon said property and not to use, permit, or suffer the use of any of the property for any illegal or immoral purpose, or, without written consent of the Seller, for any purpose other than that for which it is now intended, nor without such consent to effect, permit, or suffer any alteration or removal of, or any addition to, the buildings or improvements now or hereafter situated in or upon the property. Buyer further covenants and agrees to comply with all laws and ordinances which may in any manner affect the property. Buyer further covenants and agrees to keep and maintain the property in good tenantable condition.

2. Paragraph "13" of the Installment Contract for Sale of Real Estate reads as follows:

13. Seller reserves for himself and his employees or agents the right to enter upon the property at any reasonable time during the term of this Agreement for the purpose of inspecting and examining the property or for the purpose of performing any act proper to be performed for the purpose of protecting Seller's right, title, and interest in and to the property or to save it from waste, or for the purpose of exercising any right conferred upon Seller hereunder.

3. Paragraph "23" of the Installment Contract for Sale of Real Estate reads as follows:

23. WHEREAS, it is expressly agreed, in consideration of the Buyer occupying said premises before the delivery of a deed conveying the title thereto, that such possession shall be that of a tenant from month to month, and that a relationship of landlord and tenant shall have been created and established, and in case of such occupancy, the landlord hereby lets to the tenants and the tenant hereby hires and takes from the landlord, said premises as such tenant to begin from the date of such occupancy, until the termination thereof. Upon such termination the right of possession by the tenant shall ceaase. Upon such tenancy being created, the monthly rent for the premises shall be the same amount as is provided to be paid monthly in paragraphs 4, 5, and 6 of this Agreement, together with an amount equal to 1/12 of the annual charge for taxes, assessments, insurance premiums and other items payable under this Agreement, and the tenant agrees to make payment of such rent at the time and in the manner provided for therein.

Upon any failure, neglect, refusal, default or omission of the tenant to comply with any of the terms, covenants, agreements or conditions hereof upon the part of the tenant to be complied with or performed, the landlord may reenter the premises and remove all persons or property therefrom either by summary proceedings, as provided for in the Real Property Actions and Proceedings Law, or by force or otherwise without be-

At the time of the execution of the contract, the premises were neither designed nor occupied as a three family house; nor did defendant intend that it should be so occupied. The certificate of occupancy permitted occupancy by two families. Thereafter, and in or about the first week in May, 1967, the Fullers rented the basement to one Mrs. Harris. About the same time, the Fullers installed a cooking stove in the basement for Mrs. Harris' use. The letting of the basement and the installation of the stove was done without the knowledge or consent of the defendant.

Plaintiff offered proof through an expert as to the cause of the accident. He attributed it to the deterioration over the years of the adhesive used to join the treads of the stairway to the stringers and/or the decay of the wood of the treads and the stringers. The court finds that the plaintiff failed to prove that the defect claimed existed prior to December 29, 1966 [4] or that the defendant knew or in the exercise of reasonable care should have known of the defect prior to the date of the occurrence of the injury, i. e., May 19, 1967.

■ A landlord is not liable at common law for injuries caused by a defective condition occurring after the letting of premises in the exclusive control of the tenant. 2B O.L. Warren, Negligence in the New York Courts, § 2.01 (3d ed.·

1966). The Multiple Dwelling Law [5] (and its predecessor statute, the Tenement House Law) imposed a duty on the landlord to keep every part of the multiple dwelling in good repair. Altz v. Leiberson, 233 N.Y. 16, 134 N.E. 703 (1922).

■ Section 4(7) of the Multiple Dwelling Law defines a multiple dwelling as "a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other." The court finds that the premises, at the time of the execution of the contract of sale, i. e., December 29, 1966, was a two family residence. Thereafter, in or about the beginning of May, 1967, the Fullers converted the premises to a three family house. Feneis v. Lewin, 185 App.Div. 41, 172 N.Y.S. 821 (2d Dep't 1918), Eichorn v. Goodman, 22 Misc.2d 516, 188 N.Y.S.2d 710 (City Court, Long Beach).

■ The liability imposed by Section 78 is not absolute. Fault must be shown. Actual or constructive notice of the defective condition must be shown. Klein v. United States, 339 F.2d 512, 516 (2d Cir. 1964), Century Indemnity Co. v. Arnold, 153 F.2d 531 (2d Cir. 1946), cert. denied, 328 U.S. 854, 66 S.Ct. 1346, 90 L.Ed. 1626, Ferrara v. Sheraton McAlpin Corp., 311 F.2d 294, 296 (2d Cir. 1962), Altz v. Leiberson, *supra*,

ing liable for trespass, prosecution or damages therefor.

If the Buyer shall enter upon the premises and become a tenant of the Seller as herein provided, and shall make all of the payments and comply with and perform all of the terms, agreements, conditions and covenants herein contained upon his part to be complied with or performed, then the monthly rent provided for in the lease herein contained shall be in lieu of and substitution for the monthly payments provided for in paragraphs 4, 5, and 6 hereof and be applied as therein provided. In the event of reentry by summary proceedings, force or otherwise, the liability of the Buyer or tenants under the provisions of Paragraph 15 hereinabove set forth remains in full force and effect.

4. Plaintiff's expert, Alvin Ubell, testified that the defect was evident for at least five months prior to the "failure", i. e., the accident. The court finds that though deterioration continued progressively over many years, the plaintiff failed to prove that the condition was dangerous at any time prior to the happening of the accident. Examination and inspection, in the exercise of reasonable care, at any time prior to the accident would not have disclosed the defect.

5. Section 78 of the Multiple Dwelling Law states, in part:
"Every multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair. The owner shall be responsible for compliance with the provisions of this section."

Bonavita v. Economics Lab. Inc., 10 App.Div.2d 983, 202 N.Y.S.2d 413 (2d Dep't 1960).

New York law is not clear on whether the landlord is relieved of the statutory liability imposed by section 78 upon leasing the entire premises to a tenant. 2B O.L. Warren, Negligence in the New York Courts, § 5.05, p. 400 (3d ed. 1966).

Weiner v. Leroco Realty Corp., 279 N.Y. 127, 17 N.E.2d 796 (1938) is sometimes cited for the principle that the landlord of a multiple dwelling continues liable for any defects arising after the leasing of the entire premises. A close reading of *Weiner* will not support the statement. The facts, as appears from the opinion, are inconclusive. The plaintiff was injured while descending a stairway on June 22, 1934. "The evidence shows that the step had been broken for some time and left in a defective condition. The defense to the action brought by the plaintiff against the owner, Leroco Realty Corporation, was that the owner was out of possession in that it had leased the entire premises to Hedwig Grenz by written lease February 1, 1934, for the period of two years, at a rental of $350 a month. The courts below have sustained the dismissal of the complaint upon this ground." (at p. 129, 17 N.E.2d at p. 797) The court directed a new trial. The precise question of the liability of the owner of a multiple dwelling for defects arising subsequent to leasing the entire premises was not presented. The court held (at p. 130, 17 N.E.2d at p. 797) that both the owner and the lessee might be held for defects arising subsequent to the leasing where the lease provides "that the landlord should have the right to enter the premises at all reasonable hours for the purpose of examining the same and making such repairs and alterations as might be necessary for the safety thereof."

In Senk v. City Bank Farmers Trust Co., 108 F.2d 630, (2d Cir. 1940) the defendant owner executed a lease for the entire business premises used as a health resort. The lease provided that the tenant keep the premises "in good order and repair." The lease also provided that the owner might enter the premises "for the inspection or protection of the property, or for making any repairs or decorations." Plaintiff was injured through a defective condition created subsequent to the leasing. In an *obiter dictum* discussion, the court interpreted *Weiner* as imposing liability on a multiple dwelling owner for conditions arising subsequent to the leasing. It is noted that the lease in *Senk*, as in *Weiner*, reserved to the landlord the right to enter and a discretionary right to make repairs.

■ It is clear that the landlord cannot escape liability arising from a defective condition that exists at the time of conveyance of his interest or surrendering possession though the injury occurs subsequently. Pharm v. Lituchy, 170 Misc. 211, 9 N.Y.S.2d 657, aff'd, 258 App.Div. 724, 15 N.Y.S.2d 142, aff'd, 283 N.Y. 130, 27 N.E.2d 811.

■ Appel v. Muller, 262 N.Y. 278, 186 N.E. 785 (1933) and Tkach v. Montefiore Hospital for Chronic Diseases, 289 N.Y. 387, 46 N.E.2d 333 (1943) suggest that the liability of the landlord under section 78, where he has parted with possession of the entire premises, rests on his right of entry and his discretionary right to make repairs. The lease in *Tkach* permitted the landlord to enter the premises at all times and make repairs, alterations and improvements. The court said:

"We see no reason why the rule * * * should not be available here to charge the landlord with constructive notice of defects in all those parts of the building into which, by authority of the written lease, he may enter."

Since the statutory liability is based on fault which, in turn, is based on the obligation to keep the premises in good repair, the predicate to the imposition of

liability is to show that "he reserved the power to perform this duty." Appel v. Muller, *supra*, 262 N.Y. at p. 280, 186 N.E.2d at p. 787. This is the teaching of *Weiner* and *Senk*.

Plaintiff characterizes the installment contract of sale as a lease with an option to purchase. Such characterization is valueless. The obligation of the defendant turns on the measure of control it reserved to itself during the term of the contract. The Buyer, under the contract, had possession of the entire premises and the authority of an owner; he also assumed all the obligations of an owner. The contract provided the Seller with remedies designed to protect the security for performance of the contract. The provision for the establishment of the relationship of landlord and tenant was designed to provide the Seller with a summary remedy for repossession in the event of default. The vital question, however, is whether the Seller retained control over the subject stairway under the terms of the contract. Rodriguez v. Levin, 36 Misc.2d 239, 232 N.Y.S.2d 108 (S.Ct. Kings 1962). In *Appel, supra,* the court said (262 N.Y. at p. 280, 186 N.E. at p. 785):

"The owner may absolve himself from this duty by nothing less than 'alienation of the entire property, either permanently, as by deed, or temporarily, as by lease.' * * * If, by lease, he vests a tenant with exclusive possession, thereby depriving himself of the power of entry to make repairs, he is not liable to a passer-by, if the building or a part thereof, due to a condition of disrepair arising in the course of the tenant's occupancy, fall upon and injure him."

■ The owner's duty under section 78 ceases upon sale of the premises "when he surrenders title and possession to the grantee." 2 Harper & James, The Law of Torts, § 27.18, p. 1518 (1956). The failure to surrender record title does not stand in the way of such relief. In King v. Six Ninety & Two Realty Corporation, 153 Misc. 619, 275 N.Y.S. 753 (App.Term, 1st Dep't 1934), the owner executed an assignment of rents. Plaintiff was injured while the premises were in possession of the assignee, the defective condition having arisen subsequent to the assignment. The court, in dismissing the complaint against the owner, held (at p. 755):

"The question presented is whether 'owner,' as used in this section, means the owner of the fee, or the one in possession and control, exercising the usual functions of an owner. I construe it to mean the latter. Otherwise the statute must be held to mean that the owner of the fee is liable for a condition arising after he has divested himself of control and an opportunity to repair."

■ The owner has the burden of showing that he has parted so completely with possession and control that he is unable to perform his duty of care. Fochtman v. Gilman, 9 App.Div.2d 904, 195 N.Y.S.2d 39 (2d Dep't 1959). Defendant has sustained the burden.

■ Since the subject premises were not a multiple dwelling at the time of the execution of the contract, its subsequent conversion into a multiple dwelling without the defendant's knowledge and consent cannot serve to impose statutory liability on the owner. Nevertheless, were we to consider the premises a multiple dwelling, the owner so completely parted with possession and control of the premises as to absolve him from liability due to a defective condition arising subsequent to the execution of the contract of sale. Cohen v. Home Title Insurance Co., 2 N.Y.S.2d 245 (Sup.Ct. Kings 1938) (installment contract of sale).

The complaint is dismissed. The Clerk is directed to enter judgment in favor of the defendant, United States of America, and against the plaintiff, Robert Torres, dismissing the complaint and in favor of third-party defendants, Alvin R. Fuller and Jane Fuller and against

third-party plaintiff, United States of America.

This memorandum of decision contains the Findings of Fact and Conclusions of Law as required by Rule 52.

So ordered.