DUBOSE STEEL, INC. v. BRANCH BANKING AND TRUST COMPANY

No. 844SC113

(Filed 5 February 1985)

**Uniform Commercial Code § 36.1— letter of credit—precise compliance with terms required—substitution of purchase orders**

> Plaintiff beneficiary did not meet the terms of defendant's letter of credit precisely and therefore could not force defendant to pay where the letter in question provided that defendant would pay upon presentation of a bona fide invoice requesting payment for creditor's invoice #0046, but plaintiff and its customer agreed to a change in the order as evidenced by new purchase orders #0060 and #0064 which were substituted for #0046; #0046 was cancelled; defendant was not informed of the change nor did anyone seek an amendment of the letter of credit; and plaintiff submitted the purchase orders #0060 and #0064 to defendant. Furthermore, plaintiff's evidence did not raise issues of waiver and estoppel, and it was irrelevant whether plaintiff performed satisfactorily under the underlying contract with the creditor.

APPEAL by plaintiff from *Johnson, E. Lynn, Judge.* Judgment entered 6 September 1983 in Superior Court, SAMPSON County. Heard in the Court of Appeals 24 October 1984.

This is an action seeking payment on a letter of credit issued by defendant Branch Banking and Trust Company. From the entry of summary judgment for defendant, plaintiff appeals.

*Hunter, Wharton & Howell, by V. Lane Wharton, Jr., for plaintiff appellant.*

*Moore, Van Allen and Allen, by Julia V. Jones and George V. Hanna, III, for defendant appellee.*

JOHNSON, Judge.

The issue presented by this appeal is whether the court erred in granting summary judgment for defendant. For the following reasons, we affirm.

In the summer of 1981, Great Dominion Corporation contacted plaintiff, Dubose Steel, Inc., regarding the purchase of some steel from plaintiff. As a result of this contact, Mr. Don Shaw, plaintiff's credit manager, called Mr. Fred Miller, an employee of defendant Branch Banking and Trust Company (hereinafter "Bank"), regarding the financing of the sale of steel to Great Dominion, and was advised that the Bank had extended a line of credit to Great Dominion. Shaw subsequently requested a letter of credit from the Bank assuring plaintiff that it would be paid for steel shipped to Great Dominion. As a result of these contacts, Miller wrote a letter to Shaw dated 7 October 1981 which read:

> Mr. Don Shaw
> Dubose Steel Company
> P. O. Box 1098
> Roseboro, North Carolina 28382
>
> > RE: Great Dominion Corporation
> > Kings Mountain, North Carolina
>
> Dear Mr. Shaw:
>
> We hereby certify that we will pay upon presentation any bona fide invoice on behalf of the captioned company. The aggregate amount of such invoice or combination of invoices shall not exceed $100,000, One Hundred Thousand Dollars.
>
> It is understood that such payment will be contingent on the approval of Great Dominion Corporation. Payment shall be made after a reasonable lapse of time for trade credit; sixty (60) days after date of delivery.
>
> If we may be of further assistance, please do not hesitate to contact us.
>
> > Very truly yours,
> >
> > Frederick L. Miller
> > Vice President

No presentations for payment or payments by the Bank were made pursuant to the 7 October 1981 letter. Later, in December 1981, after Great Dominion had paid off the balance due on its account to plaintiff, Great Dominion sent another purchase order, dated 30 December 1981, bearing #0046, and calling for the purchase of various quantities and sizes of steel, in the sum of $67,795.33. At the request of Mr. Bill Bennett, plaintiff's president, defendant issued a second letter of credit, dated 5 January 1982, which read:

Mr. Don Shaw
Dubose Steel Company
P. O. Box 1098
Roseboro, North Carolina 28382

RE: Great Dominion Corporation
Kings Mountain, North Carolina

Dear Mr. Shaw:

We hereby certify that we will pay upon presentation a bona fide invoice requesting payment for Great Dominion Corporation invoice #0046 in an aggregate amount not to exceed $75,000.00, Seventy Five Thousand Dollars.

Such payment shall be made as long as the materials delivered are acceptable to Great Dominion and conformed to specifications and terms set forth by Great Dominion Corporation. Such payments shall be made after a reasonable lapse of time for trade credit; sixty (60) days after date of delivery.

Our letter, dated October 7, 1981, is null and void and we have no further obligation under same.

Very truly yours,

Frederick L. Miller
Vice President

Later in January 1982, plaintiff and Great Dominion agreed to a change in the order as evidenced by new purchase orders #0060 and #0064, which were substituted for order #0046. The Bank, however, was not informed of this change, nor did anyone seek an amendment of the 5 January 1982 letter of credit. At the

time of these changes, part of the steel under order #0046 had already been shipped. Great Dominion returned this steel to plaintiff for which it issued credit memos. Plaintiff shipped the steel according to the new orders, which called for hot rolled structural steel, the same as in order #0046, but in different forms. This steel, in the sum of $72,133.76, was delivered to Great Dominion within 60 days of 5 January 1982, was accepted by Great Dominion, and conformed to the specifications and terms of the orders.

When Great Dominion did not pay for the steel, plaintiff originally made an oral demand for payment from the Bank. Plaintiff later submitted to the Bank invoices based upon Great Dominion's orders #0060 and #0064, but never presented invoices based upon order #0046. The Bank refused to make any payment under the letter of credit because plaintiff failed to present invoices based upon order #0046.

In *Courtaulds North America, Inc. v. North Carolina National Bank*, 528 F. 2d 802 (4th Cir. 1975), the defendant bank issued a letter of credit on behalf of its customer, Adastra Knitting Mills, Inc. One of the conditions of the letter of credit was that the draft plaintiff presented for payment be accompanied by a "[c]ommercial invoice . . . stating that it covers . . . 100% acrylic yarn." The bank denied liability on the ground that the draft did not agree with the letter's conditions since the accompanying invoices stated that the goods were "Imported Acrylic Yarn." Applying North Carolina law, the Fourth Circuit held that the bank was not liable on the letter of credit because the accompanying invoices did not conform to the terms of the letter of credit. The Court relied in part upon the following provisions of G.S. 25-5-109:

> Insurer's obligation to its customer. — (1) An insurer's obligation to its customer includes good faith and observance of any general banking usage but unless otherwise agreed does not include liability or responsibility
>
> (a) for performance of the underlying contract for sale or other transaction between the customer and the beneficiary; or
>
> . . .
>
> (c) based on knowledge or lack of knowledge of any usage of any particular trade.

(2) An insurer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.

The Court also relied upon the majority black letter law of letters of credit that the beneficiary must meet the terms of the credit precisely in order to force the issuer to perform. Without such strict compliance with the letter of credit, the beneficiary could not recover from the bank. H. Harfield, Bank Credits and Acceptances, at p. 73 (5th ed. 1974).

We find the reasoning of the Fourth Circuit to be persuasive. Plaintiff urges this Court to adopt a rule of "substantial compliance" rather than follow the majority rule of strict compliance. We refuse to adopt such a new rule as the majority rule is based upon sound reasoning and commercial reality. *Courtaulds, supra; Philadelphia Gear Corp. v. Central Bank*, 717 F. 2d 230, *rehg. denied*, 720 F. 2d 1291 (5th Cir. 1983); *Consolidated Aluminum Corp. v. Bank of Virginia*, 544 F. Supp. 386 (D. Md. 1982), *aff'd*, 704 F. 2d 136 (4th Cir. 1983).

Summary judgment is particularly appropriate in suits involving letters of credit. *Data General Corp. v. Citizens National Bank of Fairfield*, 502 F. Supp. 776 (D. Conn. 1980). In the case *sub judice*, it is undisputed that plaintiff did not present an invoice based upon order #0046. Plaintiff thus did not comply with the terms of the letter of credit and the Bank was not liable thereon. *Courtaulds, supra.* There being no genuine issue of material fact and the Bank being entitled to judgment as a matter of law, summary judgment was properly entered for defendant. G.S. 1A-1, Rule 56(c).

Plaintiff, however, argues that summary judgment was improperly entered by attempting to raise issues of fact as to waiver and estoppel. Plaintiff contends that there was evidence that Great Dominion waived the non-compliance by plaintiff, since Great Dominion stated it was satisfied with the steel it received and found it conforming. This argument fails for three reasons. First, the letter of credit contained two requirements: (1) presentation of an invoice requesting payment for Great Dominion in-

voice #0046; and (2) acceptance of the goods by Great Dominion. The statement of Mr. Dickens of Great Dominion that the goods were acceptable only satisfied the second requirement of the letter of credit. There is no evidence that Great Dominion waived the presentation of the invoice. Second, even if Great Dominion had waived the presentation of the document, the Bank was not required to consent to such a waiver. G.S. 25-5-109; G.S. 25-5-114; *Philadelphia Gear, supra.* Third, a bank does not have a good faith duty to seek a waiver from its customer. *See AMF Head Sports Wear, Inc. v. Ray Scott's All-American Sports Club, Inc.,* 448 F. Supp. 222 (D. Ariz. 1978); *Corporacion De Mercadeo Agricola v. Mellon Bank International,* 608 F. 2d 43 (2d Cir. 1979).

Plaintiff also contends that the Bank should be estopped from denying liability because the Bank knew plaintiff would not ship the goods unless the Bank issued a letter of credit, and because the Bank drafted the letter of credit to require the presentation of a non-existent Great Dominion *invoice* #0046, although there was a Great Dominion purchase order by that number, but which the Bank did not have before it when it drafted the letter. These contentions fail because Great Dominion and plaintiff, without informing the Bank, cancelled purchase order #0046. Plaintiff also knew that the invoice number referred to in the letter was actually Great Dominion purchase order #0046. Plaintiff also contends that the Bank should have allowed it to cure its presentation before dishonoring it. Cure, however, was impossible because order #0046 had been cancelled, and new orders, calling for different quantities and forms of steel, substituted.

Plaintiff's major complaint is that it performed satisfactorily under the underlying contract with Great Dominion and that it is unfair for it not to be paid under the letter of credit. However, in determining the Bank's duty to honor the letter of credit, one does not look to the underlying contract:

> An insurer must honor a draft or demand for payment which complies with the terms of the relevant credit *regardless* of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. . . . (Emphasis added.)

G.S. 25-5-114(1). The bank's duty to honor arises only when the demand for payment *complies* with the relevant credit. Plaintiff had

the burden of showing that its demand for payment complied with the terms of the letter of credit. *Philadelphia Gear Corp. v. Central Bank*, 717 F. 2d 230 (5th Cir. 1980). Having failed to comply, plaintiff could not recover from the Bank. *Courtaulds, supra.*

Affirmed.

Judges WHICHARD and BECTON concur.