SANDRA KAY PETTY v. CITY OF CHARLOTTE, NORTH CAROLINA, A MUNICIPAL CORPORATION, AND THE HOUSING AUTHORITY OF THE CITY OF CHARLOTTE, NORTH CAROLINA

No. 8626SC863

(Filed 5 May 1987)

1. **Negligence § 50.1— automobile collision with fence pole—Housing Authority property—no evidence of City's dominion and control**

    In an action against the City and the Housing Authority for injuries sustained when the driver of plaintiff's car swerved off the road to avoid an oncoming car in his lane and an overhanging fence pole impaled plaintiff's car and pierced plaintiff's face and throat, the trial court correctly denied the Housing Authority's motion for a directed verdict and judgment n.o.v., made on the grounds that the City had dominion and control of the fence, where the overwhelming evidence was that the fence was located on Housing Authority property and the Housing Authority failed to come forward with evidence from which the jury could determine either the nature of the relationship between the Housing Authority and the City or the extent to which either the City or the Housing Authority controlled the fence.

2. **Negligence § 10.1— defective fence post—negligence of City—Housing Authority not insulated**

    In an action against the City and the Housing Authority for injuries sustained when plaintiff's car collided with an overhanging fence post, the City's negligence was concurrent and did not insulate the Housing Authority.

3. **Negligence § 10.3— defective fence post—negligence of driver—Housing Authority not insulated**

    Where plaintiff was injured when her car collided with a fence post, defendant Housing Authority's negligence was not insulated by the negligence

of an unknown driver who caused plaintiff's car to leave the road where the only evidence was that the unknown vehicle swerved over the center line; there may have been legally justified reasons for the car crossing the center line; and, even if the unknown driver was negligent, it was not so highly improbable an occurrence as to bear no reasonable connection to the harm threatened by the Housing Authority's original negligence.

**4. Negligence § 19— collision with fence post—driver of plaintiff's car swerved— not contributory negligence**

In an action by a plaintiff who was injured by an overhanging fence post when her car left the road, plaintiff was not contributorily negligent as a matter of law where the only evidence was that the driver of plaintiff's car left the road because an unknown vehicle crossed into his lane of travel.

**5. Appeal and Error § 31.1— assignment of error to jury instructions—not reviewed**

The Court of Appeals in a negligence action would not review portions of a jury charge to which defendant failed to object where defendant clearly failed to abide by Rule 10(b)(2) of the Rules of Appellate Procedure.

**6. Negligence § 43— defective fence post—issue as to dominion and control of fence—not submitted—no error**

In an action arising from the collision of plaintiff's car with a fence post, the trial judge did not err by failing to instruct the jury that the City had dominion and control over the fence where defendant's counsel was given the opportunity to propose issues for the jury but instead joined with opposing counsel and the trial court in formulating the issues actually submitted; the trial court was deemed to have found against defendant on the issue of the City's dominion and control because the issue was not submitted to the jury and the trial court failed to make a finding on the issue; and the trial court could have properly concluded that there was no substantial evidence requiring defendant's proposed instruction on dominion and control.

**7. Rules of Civil Procedure § 60.4— Rule 60 motion on appeal—remanded to trial court**

A *motion* under N.C.G.S. § 1A-1, Rule 60 to modify a judgment was properly filed with the Court of Appeals, but the matter was remanded because the trial court was in a better position to resolve the issues.

APPEAL by defendant The Housing Authority of the City of Charlotte, North Carolina, from *Friday, Judge.* Judgment entered 28 January 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 14 January 1987.

*Golding, Crews, Meekins & Gordon, by James P. Crews, for defendant-appellant.*

*Gerdes, Mason, Wilson & Tolbert, by C. Michael Wilson and J. David Tolbert, for plaintiff-appellee.*

GREENE, Judge.

Plaintiff brought this suit against the City of Charlotte (here-inafter, the "City") and The Housing Authority of the City of Charlotte (hereinafter, the "Housing Authority" or "defendant") for personal injuries sustained in an automobile collision with a defective fence post allegedly located on Housing Authority prop-erty. The jury found plaintiff was injured by the negligence of both the City and the Housing Authority and allowed her recov-ery of $1,200,000.00. The Housing Authority and the City gave notice of appeal. Pending appeal, plaintiff settled her claim with the City for the sum of $600,000 plus court costs. The City then withdrew its appeal to this Court.

Thus, the primary issues for this Court's determination are: 1) whether there was evidence of the Housing Authority's posses-sion and control of the fence on its property sufficient to submit the issue of the Housing Authority's negligence to the jury; 2) whether the Housing Authority's negligence, if any, was insulated as a matter of law by the negligence of the City and the driver of an unknown vehicle; and 3) whether plaintiff was contributorily negligent as a matter of law.

I

At the conclusion of all the evidence, the Housing Authority argued there was insufficient evidence to submit its negligence to the jury and moved for directed verdict. The Housing Authority's motion was denied. After the jury returned its negligence verdict, the Housing Authority's motion for judgment notwithstanding the verdict was also denied. Under N.C. Gen. Stat. Sec. 1A-1, Rule 50(a) (1983), a defendant's motion for directed verdict challenges the sufficiency of the evidence to justify a verdict for plaintiff when the evidence is considered in the light most favorable to plaintiff. *See Kelly v. Int. Harvester Co.*, 278 N.C. 153, 157, 179 S.E. 2d 396, 398 (1971). The same test applies to a motion for judg-ment notwithstanding the verdict under N.C. Gen. Stat. Sec. 1A-1, Rule 50(b) (1983). *See Snellings v. Roberts*, 12 N.C. App. 476, 478-79, 183 S.E. 2d 872, 874, *cert. denied*, 279 N.C. 727, 184 S.E. 2d 886 (1971).

Cast in the light most favorable to plaintiff, the evidence tended to show that, since the late 1930's, the Housing Authority

had owned an approximately 30 acre tract on Oaklawn Avenue in Charlotte. The Housing Authority operated a public housing project, Fairview Homes, on the property. A chain link fence was situated on the tract and surrounded a large portion of the property. For at least twenty years, the City operated a park known as Oaklawn Park on a portion of the Housing Authority property bordering McCall Street. Defendant maintained no part of the fence bordering the park since it claimed it assumed the City would maintain the fence. There was no express agreement between the Housing Authority and the City governing use of the parkland or maintenance of the fence.

At the portion of the park adjoining McCall Street, the fence was located approximately three feet six inches from the street pavement. This particular part of the fence had been damaged and torn down on several occasions after which the City repaired the fence and replaced fence poles on occasion. Neither party offered evidence of how long the park had existed nor under what claim of right, if any, the City occupied the park area. No evidence was offered by defendant directly showing when or by whom the fence was originally erected; however, plaintiff offered evidence that the fence sections, which nearly surrounded the tract, had all been erected at the same time.

The fence bordering McCall Street had sporadically been in a state of disrepair for several months preceding plaintiff's injury. Through its manager of Fairview Homes, the Housing Authority received actual notice of the dilapidated condition of the fence on 23 March 1983, three days before plaintiff's injuries. At 1:00 a.m. on 26 March 1983, plaintiff, as passenger in her own vehicle, was proceeding south on McCall Street. A northbound car crossed onto plaintiff's side of the street. The driver of plaintiff's car drove partially off the pavement to his right. A metal pole hung down horizontally from the top of the fence at an angle toward McCall Street. The pole impaled plaintiff's car, pierced plaintiff's face and throat and exited the rear of the car. Plaintiff survived her massive injuries.

[1] The Housing Authority's motion for directed verdict was grounded on its contention it had no duty to plaintiff because the fence injuring plaintiff was under the "dominion and control" of the City. *See Green v. Duke Power Co.*, 305 N.C. 603, 612, 290

S.E. 2d 593, 598 (1982) (where landowner had no control over ease-
ment, landowner not liable since control, not ownership, deter-
mined liability); *see generally* 35 Am. Jur. 2d *Fences* Sec. 46-47
(1967). However, defendant has failed to offer any evidence suffi-
cient to demonstrate the City's exclusive "dominion and control"
of the defective fence. The fact of possession or occupation under-
lies most forms of premises liability. *E.g., Ridge v. Grimes*, 53
N.C. App. 619, 620, 281 S.E. 2d 448, 449 (1981) ("possessor" of
"public" way deemed liable to public); *see generally* Restatement
(Second) of Torts Sec. 328E *et seq.* (1965) (possessor, as defined,
incurs premises liability). However, the rebuttable "presumption
[is] that possession is in him who has the true title." *Memory v.
Wells*, 242 N.C. 277, 280, 87 S.E. 2d 497, 500 (1955). Section 328E(c)
of the Restatement (Second) of Torts similarly presumes that the
"possessor of land" is the "person who is entitled to immediate
occupation of the land, *if no other* person" occupies, or last oc-
cupied, the land *"with the intent to control it."* (Emphasis added.)

Accordingly, once its ownership (and therefore its right to
immediate occupancy) of the park land and fence was sufficiently
established, the Housing Authority was required to rebut its duty
as presumed possessor or occupier by coming forward with evi-
dence sufficient to show it had parted so completely with posses-
sion and control of the offending fence that it was unable to
perform its duty of care. *See Torres v. U.S.*, 324 F. Supp. 1195,
1200 (E.D.N.Y. 1969) (construing New York law, owner held to
have burden of showing unable to perform duty of care); *Hedrick
v. Akers*, 244 N.C. 274, 275, 93 S.E. 2d 160, 161 (1956) (where
neither tenant's obligation to provide drainage nor tenant's in-
stallation of pipe nor tenant's duty of upkeep was shown, owner,
not tenant, liable for injuries resulting from pipe installed in front
of leased premises); *see also* 62 Am. Jur. 2d *Premises Liability*
Sec. 12 at 240 (1972) (ownership is sufficient to give control and
impose duty).

The overwhelming evidence is that the fence along McCall
Street was located on Housing Authority property. Despite its
superior position of knowledge as record titleholder, the Housing
Authority came forward with no evidence from which the jury
could fairly determine either the nature of the relationship be-
tween the Housing Authority and the City or the extent to which
either the City or the Housing Authority controlled the fence.

The City's occasional repair of the fence does not itself prove the City's intent to possess and control the fence since these repairs might reflect no more than the City's statutory duty as a municipality to clear streets and rights-of-way. *See* N.C. Gen. Stat. Sec. 160A-296(a)(2) (1982).

The evidence was insufficient to show the City exercised such control over the fence that defendant's duty of care as possessor or occupier was supplanted. Considered in the light most favorable to plaintiff, the evidence of defendant's ownership of the fence, coupled with actual notice of its disrepair, was therefore sufficient under these facts to establish defendant's duty to plaintiff. Accordingly, insofar as defendant's motions for directed verdict and judgment notwithstanding the verdict were based on the contention that defendant owed plaintiff no duty, the motions were appropriately denied.

## II

In its motion for directed verdict, defendant also argued any negligence on its part was insulated by the negligence of either the driver of the unknown vehicle who crossed the center line or the City. The trial judge submitted the issue of insulating negligence to the jury. The Housing Authority now argues the court should have found as a matter of law that the Housing Authority's negligence was insulated by the negligence of both the City or the unknown driver.

In *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 236-37, 311 S.E. 2d 559, 566-67 (1984), our Supreme Court restated the basic principles of insulating negligence:

> Insulating negligence means something more than a current and contributing cause. It is not to be invoked as determinative merely upon proof of negligent conduct on the part of each of two persons, acting independently, whose acts unite to cause a single injury. . . . [Citations omitted.]

> "An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote. It is immaterial how many new elements or forces have been in-

troduced, if the original cause remains active, the liability for its result is not shifted. . . ." *Harton v. Tel. Co.*, 141 N.C. 455, 462-63, 54 S.E. 299, 301-02 (1906) (citation omitted).

. . .

"The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury. . . ." *Riddle v. Artis*, 243 N.C. 668, 671, 91 S.E. 2d 894, 896-97 (1956) (citations omitted).

A

[2] The Housing Authority first contends the City's negligence insulated its own negligence. There is no dispute among the parties that the City had a duty to maintain the streets free from unnecessary obstructions and to keep them in a reasonably safe condition. *See* N.C. Gen. Stat. Sec. 160A-296(a)(2) (1982) (city has affirmative duty to keep streets clear); *see also Stancill v. City of Washington*, 29 N.C. App. 707, 710, 225 S.E. 2d 834, 836 (1976). Evidence showed McCall Street was a city street and that a city policeman had observed the fence's dangerous condition. Assuming the City's negligent failure to maintain McCall Street, the question under *Hairston* is whether the Housing Authority could have reasonably foreseen the City's negligence and the resultant harm to the plaintiff.

We hold the City's negligence was in the nature of concurrent, not insulating, negligence. While inexcusable, the City's negligence was not "so highly improbable and extraordinary an occurrence as to bear no reasonable connection to the harm threatened by [the Housing Authority's] original negligence." *Hairston*, 310 N.C. at 238, 311 S.E. 2d at 567-68. As the trial judge properly charged the jury on insulating negligence, we reject the Housing Authority's contention the trial court should have found this issue in defendant's favor as a matter of law.

B

[3] Second, defendant contends its negligence was insulated by the negligence of the unknown driver that caused plaintiff's vehicle to leave the road. After reviewing the record, we find no

evidence the unknown driver was negligent at all. The only evidence before the trial court was that the unknown vehicle swerved over the center line. That is not itself sufficient evidence of negligence: there may have been legally justified reasons for the car's crossing the center line. As the Housing Authority has failed to prove the unknown driver's negligence, its argument of insulating negligence has no merit. Even if we assume the unknown driver negligently crossed the center line, we again find it not so highly improbable an occurrence as to bear no reasonable connection to the harm threatened by the Housing Authority's original negligence. The law fixes the Housing Authority with notice of the exigencies of traffic and the prevalence of that "occasional negligence which is one of the incidents of human life." *Hairston*, 310 N.C. at 234, 311 S.E. 2d at 565 (quoting *Beanblossom v. Thomas*, 265 N.C. 181, 188, 146 S.E. 2d 36, 41 (1966)).

### III

[4]   Defendant next argues plaintiff was contributorily negligent as a matter of law. This argument is also without merit. It is true that, as a matter of law, any negligence on the part of the driver of plaintiff's car is imputed to her when she sues anyone other than the driver. *See Etheridge v. Norfolk So. Rwy. Co.*, 7 N.C. App. 140, 142-43, 171 S.E. 2d 459, 461-62, *cert. denied*, 276 N.C. 327 (1970). In this case, however, there is no evidence the driver of plaintiff's vehicle was negligent. It is true he swerved off the road a few inches and struck the overhanging fence. However, the only testimony is that he left the road because an unknown vehicle crossed into his lane of travel. The evidence at best merely raised an issue which the court appropriately submitted to the jury.

### IV

[5]   The Housing Authority further raises several assignments of error specifically concerning the charge to the jury. Defendant was given an opportunity to make its objections to the charge after the trial court had excused the jury. Defendant did not request an instruction conference prior to the jury's retiring. Defendant failed to submit any instructions or object to the absence of any instructions regarding any Charlotte city ordinances, any supposed tenancy by the City, or plaintiff's contributory negli-

gence. Rule 10(b)(2) of the Rules of Appellate Procedure states that,

> no party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects on the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

As defendant clearly failed to abide by Rule 10(b)(2), this Court will not review those portions of the jury charge to which defendant failed to object.

**[6]** Defendant did object to the trial court's failure to instruct the jury that the City had dominion and control over the fence in question. We note defendant waived its right to a jury trial on the issue of dominion and control and related issues since it failed to demand submission of these issues before the jury retired. N.C.R. Civ. P. 49(c); *Superior Foods, Inc. v. Harris-Teeter Super Markets, Inc.*, 288 N.C. 213, 225-26, 217 S.E. 2d 566, 575 (1975). Counsel for defendant was given the opportunity to propose issues for the jury but instead joined with opposing counsel and the trial court in formulating the four issues that were actually submitted. Since the issue of the City's dominion and control was not submitted to the jury, and since the trial court failed to make a finding on the issue, the court is deemed to have found against defendant on the issue of the City's dominion and control. N.C.R. Civ. P. 49(c). Thus, since the City was deemed not to have dominion and control of the defective fence under Rule 49(c), the trial court was not required to give any abstract instructions of law pertaining to the omitted issue. *See State v. Johnson*, 282 N.C. 1, 26, 191 S.E. 2d 641, 658 (1972) (error to charge upon abstract principle of law not applicable to evidence in case).

Given the incomplete record and our earlier discussion of defendant's directed verdict motion, the trial court could have in any event also properly concluded there was no substantial evidence requiring defendant's proposed instruction on dominion and control. *See State v. White*, 77 N.C. App. 45, 52, 334 S.E. 2d 786, 791-92, *cert. denied*, 315 N.C. 189, 337 S.E. 2d 864 (1985). A proposed instruction must be supported by evidence which does

more than "merely sho[w] it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so . . . ." *State v. Gaskins*, 252 N.C. 46, 48-49, 112 S.E. 2d 745, 747 (1960).

V

[7]  We have reviewed the remaining assignments of error raised by defendant and find them without merit. Defendant has also filed a motion with this Court requesting modification of the judgment below under N.C. Gen. Stat. Sec. 1A-1, Rule 60. Since defendant filed its Rule 60 motion while this case was pending on appeal, the motion was properly filed in this Court. *Swygert v. Swygert*, 46 N.C. App. 173, 181, 264 S.E. 2d 902, 907-08 (1980). However, the trial court is in a better position than this Court to resolve these questions. *Id.* Therefore, we remand disposition of this motion to the Superior Court of Mecklenburg County for the purpose of determining all issues raised by defendant's motion under Rule 60. The Clerk of this Court is directed to prepare copies of the motion and defendant's answer thereto and copies of all affidavits filed in this Court in support of and in opposition to the motion and certify same to the Clerk of the Superior Court of Mecklenburg County. Upon remand, the Superior Court shall hear and determine the motion upon such affidavits and additional evidence as is presented to the court.

No error.

Defendant's motion under Rule 60 is remanded.

Judges WELLS and EAGLES concur.