NORTHWESTERN BANK v. NCF FINANCIAL CORPORATION (FORMERLY KNOWN AS CAROLINA FINCORP, INC.) AND NORTH CAROLINA FEDERAL SAVINGS AND LOAN ASSOCIATION

No. 8723SC576

(Filed 16 February 1988)

**1. Principal and Agent § 5.2— agent's signing of letters of credit—express and apparent authority—sufficiency of evidence**

Testimony by defendant's vice president that he had previously signed letters of credit on behalf of defendant and that he had authority to do so even when a letter of credit was not accompanied by a guaranty letter from defendant's parent company was sufficient to show that the vice president had the express authority to execute letters of credit on behalf of defendant; furthermore, evidence was also sufficient to show that he was clothed with the apparent authority to issue letters of credit where there was no showing of a limitation on his authority to approve letters of credit and no showing that plaintiff had notice of any limitation.

**2. Uniform Commercial Code § 39.1— letter of credit—no demand for payment on underlying agreement—no requirement of letter of credit**

There was no merit to defendant's contention that plaintiff was not entitled to present a draft on a letter of credit issued by it because plaintiff failed to make a demand for payment from the original borrower in the underlying agreement, since such a demand was not a term of the letter of credit in question. N.C.G.S. § 25-5-114(a).

**3. Fraud § 4— fraudulent procurement of letter of credit—no knowledge by beneficiary—no showing of fraud**

The trial court did not err in refusing to submit to the jury an issue of fraud in the procurement of a letter of credit where defendant maintained that a fiduciary relationship existed between it as issuer of the letter and the original borrower by virtue of her position as an assistant secretary for the parent corporation of defendant, and constructive fraud should have been presumed from the transaction, since the beneficiary must have known of the fraudulent procurement of the letter of credit at the time it extended credit based on the letter as collateral, and defendant did not request that an issue of knowledge be submitted to the jury, thereby waiving its right to a jury trial on this issue.

APPEAL by defendant NCF Financial Corporation from *Rousseau, Jr., Judge.* Judgment entered 19 March 1987 in Superior Court, WILKES County. Heard in the Court of Appeals 2 December 1987.

*Francis C. Clark, Petree, Stockton & Robinson, by John T. Allred and Adam H. Broome, and Smith, Helms, Mulliss & Moore, by Robert B. Cordle and William R. Purcell, II, for plaintiff-appellee.*

*Bailey, Patterson, Caddell & Bailey, by Allen A. Bailey and H. Morris Caddell, Jr., for defendant-appellant.*

GREENE, Judge.

This is a civil action to recover on an irrevocable letter of credit held by plaintiff Northwestern Bank (hereinafter "Northwestern"). Defendant NCF Financial Corporation (formerly known as Carolina Fincorp, Inc., and hereinafter "NCF") issued the letter of credit but has refused to pay plaintiff. Plaintiff brought this suit to obtain payment under the letter of credit. The jury found in favor of plaintiff and the trial court entered judgment in the amount of $250,000 plus interest. Defendant appeals.

In March or April 1984, Lynn Sheppard and her husband met with Guy Cline, a Northwestern loan officer, seeking a personal loan for the purpose of beginning operation of a dye processing plant, Val-Dye, Inc. The Sheppards requested a loan of $250,000, and proposed using a letter of credit to be issued by NCF as collateral for the loan. At the time of the request, Mrs. Sheppard was employed as an assistant secretary and administrative assistant for North Carolina Federal Savings and Loan Association (hereinafter "Federal"). NCF is a wholly owned subsidiary of Federal. Mrs. Sheppard mailed a draft of the proposed letter of credit to Northwestern so it could review the letter to determine if it complied with Northwestern's requirements. This draft contained a signature line for Herman Parnell, vice president of NCF.

Northwestern reviewed the draft and made revisions to the letter so that it would meet their requirements. Northwestern also investigated NCF's authority to issue letters of credit. After determining that NCF could issue letters of credit, Cline telephoned Parnell and informed him of the revisions required by Northwestern. Northwestern inquired as to whether Parnell had the authority to issue letters of credit for NCF and was assured by Parnell that he did.

In mid-April 1984, Cline received the revised letter of credit issued by NCF. The letter authorized draws of up to an aggregate amount of $250,000 for the account of the Sheppards and/or Val-Dye, Inc., and was signed by Parnell as vice president of NCF. Northwestern investigated the Sheppards' credit history and approved the loan, relying on the letter of credit as collateral. The Sheppards executed a note for $250,000, a credit agreement, and a security agreement in favor of Northwestern, all of which were dated 1 May 1984. The letter of credit provided that "drafts are to be accompanied by your certified statement that the loan is in default and past due." By 5 June 1984, the loan was fully funded.

The Sheppards made the first two quarterly interest payments on the note but defaulted on the quarterly interest payment due in February 1985. Pursuant to the letter of credit, Northwestern then submitted a draft to NCF for $250,000, along with a certified statement that the loan was in default. When NCF refused to pay, Northwestern brought this action to enforce the letter of credit.

At the close of plaintiff's case, defendants rested without offering evidence. The issues submitted to the jury were: (1) whether NCF authorized Parnell to issue the letter of credit; and (2) whether plaintiff properly complied with the terms of the letter in requesting payment from the defendant. The jury answered both issues affirmatively and judgment was entered in favor of plaintiff. Defendant NCF appeals the trial court's denial of its motion for a directed verdict against plaintiff at the close of plaintiff's evidence. In addition, NCF assigns as error the trial court's failure to submit to the jury NCF's proposed issues concerning fraud in the procurement of the letter of credit.

---

This appeal presents the following issues: I) Whether there was sufficient evidence to overcome NCF's motion for a directed verdict on the issues of (A) whether Parnell had the actual or apparent authority to issue the letter of credit; (B) whether Northwestern was entitled to present a draft on the letter of credit; and II) whether alleged fraud in procuring the letter of credit entitled NCF to a directed verdict and relieved it of the duty to honor the letter of credit, or alternatively, whether the trial court erred in refusing to submit the issue of fraud to the jury.

I

A motion for directed verdict pursuant to Rule 50(a) of the North Carolina Rules of Civil Procedure, N.C.G.S. Sec. 1A-1 (1983), presents the question of whether plaintiff's evidence was sufficient to carry the case to the jury:

> In passing on this motion, the trial judge must consider the evidence in the light most favorable to the non-movant, and conflicts in the evidence together with inferences which may be drawn from it must be resolved in favor of the non-movant. The motion may be granted only if the evidence is insufficient to justify a verdict for the non-movant as a matter of law.

*Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E. 2d 452, 455 (1979) (citation omitted).

A

[1]   Defendant first contends that the evidence was not sufficient to show that Parnell had either the actual or apparent authority to execute the letter of credit on behalf of NCF. A corporation is bound by a contract made by its agent acting within the scope of his actual or apparent authority. *See George E. Shepard, Jr., Inc. v. Kim, Inc.*, 52 N.C. App. 700, 706-07, 279 S.E. 2d 858, 863, *disc. rev. denied*, 304 N.C. 392, 285 S.E. 2d 831 (1981). "[T]he agent's power to bind the corporation may be ' "inferred from the conduct of the corporation in the transaction of its business and the power which the corporation has customarily permitted the . . . agent to exercise." ' " *Fuller v. Southland Corp.*, 57 N.C. App. 1, 11, 290 S.E. 2d 754, 760, *disc. rev. denied*, 306 N.C. 556, 294 S.E. 2d 223 (1982) (quoting *Yaggy v. The B.V.D. Co.*, 7 N.C. App. 590, 601, 173 S.E. 2d 496, 504 (1970) ).

Parnell testified that he had previously signed letters of credit on behalf of NCF. Although he normally signed a letter of credit when it was accompanied by a guaranty letter from Federal, he testified that he nevertheless could sign without it. An agent's direct testimony is competent to show both the proof of agency and the nature and extent of the relationship. *Sealey v. Albany Ins. Co.*, 253 N.C. 774, 777, 117 S.E. 2d 744, 746-47 (1961). No evidence was introduced contradicting this testimony. There-

fore, the evidence was sufficient to show that Parnell had the express authority to execute letters of credit on behalf of NCF.

Even without this evidence concerning Parnell's express authority, the evidence was also sufficient to show that he was clothed with the apparent authority to issue letters of credit. In *Zimmerman v. Hogg & Allen, P.A.*, 286 N.C. 24, 31, 209 S.E. 2d 795, 799 (1974), our Supreme Court held a principal's liability for an agent's acts may be determined by the authority a third person exercising reasonable care believes the principal has conferred upon the agent. The Court also stated: "When a corporate agent acts within the scope of his apparent authority, and the third party has no notice of the limitation on such authority, the corporation will be bound by the acts of its agent . . . ." *Id.* at 30, 209 S.E. 2d at 799.

NCF contends that because the letter of credit was not accompanied by a guaranty letter from Federal at the time the loan was made, Northwestern knew that Parnell had exceeded his authority. However, Parnell testified he had issued letters of credit without guaranty letters in the past, and further testified that NCF had no written or formal policy concerning the issuance of letters of credit. The letter of credit sent to Northwestern contained no limitation on Parnell's authority to sign nor did it contain any reference to a guaranty letter. Northwestern's loan officer, Cline, also telephoned Parnell and discussed the revisions to the letter Northwestern required. *See Edgecombe Bonded Warehouse Co. v. Security Nat'l Bank*, 216 N.C. 246, 253, 4 S.E. 2d 863, 868 (1939) ("when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority"). Even if there was a limitation on Parnell's authority to approve letters of credit, which we do not believe the evidence necessarily demonstrates, the evidence was sufficient to show that Northwestern had no notice of the limitation. Therefore, the trial court correctly denied NCF"s motion for a directed verdict on this issue.

B

[2] NCF next contends that Northwestern was not entitled to present a draft on the letter of credit because it failed to make a demand for payment from the Sheppards. NCF alleges that the

underlying agreement between the Sheppards and Northwestern required Northwestern to make a demand on the Sheppards for payment when the loan became overdue before presenting a draft to NCF under the letter of credit. However, whether Northwestern complied with the terms of the underlying agreement with the Sheppards is not material to NCF's obligations as issuer of the letter of credit. Section 25-5-114(1) (1986) of the North Carolina General Statutes states: "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary."[1] *See, e.g., O'Grady v. First Union Nat'l Bank,* 296 N.C. 212, 232, 250 S.E. 2d 587, 600 (1978) (a letter of credit is independent of the underlying contract between the customer and the beneficiary).

With limited exceptions, Section 25-5-114(1) "imposes on the issuer a duty to honor drafts where there has been compliance with the terms of credit." *O'Grady,* 296 N.C. at 232, 250 S.E. 2d at 600. The letter of credit in this case, which was printed on Carolina Fincorp stationery and signed by Parnell as vice president, provided for due honor of drafts that were accompanied by a "certified statement that the loan is in default and past due." While the beneficiary must strictly comply with the terms of a letter of credit in order to make a demand from the issuer, *see Dubose Steel, Inc. v. Branch Banking and Trust Co.,* 72 N.C. App. 598, 602, 324 S.E. 2d 859, 862, *disc. rev. denied,* 314 N.C. 115, 332 S.E. 2d 480 (1985), defendant does not contend plaintiff failed to comply with the letter of credit terms here. In any event, the evidence tended to show Northwestern complied with the terms and delivered the required certified statement to NCF. Assuming there was a requirement of demand on the Sheppards, it was not a term of the letter of credit and therefore NCF's contention is without merit.

II

[3] NCF also argues the trial judge erred in denying its motion for a directed verdict on the ground that the letter of credit was

---

1. "An 'issuer' is a bank or other person issuing a credit" while a " 'customer' is a buyer or other person who causes an issuer to issue a credit." "A 'beneficiary' of a credit is a person who is entitled under its terms to draw or demand payment." N.C.G.S. Sec. 25-5-103(1)(c), (g) and (d).

procured through fraud which it contends would excuse its performance. Alternatively, NCF argues it was entitled to a submission of the issue of fraud to the jury. NCF maintains a fiduciary relationship existed between it and Mrs. Sheppard by virtue of her position as an assistant secretary for Federal, the parent corporation of NCF. *See* N.C.G.S. Sec. 55-35 (1982) (officers of a corporation occupy a fiduciary position in relation to the corporations they serve). It argues that, when Mrs. Sheppard obtained the letter of credit, constructive fraud should have been presumed from the transaction. *See Bumgarner v. Tomblin*, 63 N.C. App. 636, 641, 306 S.E. 2d 178, 182 (1983) (where a fiduciary relationship exists, constructive fraud is presumed from the breach of a fiduciary duty). For the reasons set out below, we hold defendant was entitled to neither a directed verdict nor a jury instruction on the issue of fraud.

Professors White and Summers have noted in their treatise on the Uniform Commercial Code:

> [T]he customer might have fraudulently induced the issuer to enter this contract, or the consideration promised by the customer might have failed, or the customer might have gone bankrupt after issue and rendered the issuer's eventual claim for reimbursement highly uncertain or worthless. Even so, the issuer may not utilize these and analogous grounds as a justification for refusal to honor.

J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* Sec. 18-2 at 712 (2d ed. 1980). *See also id.* Sec. 18-4 at 726 (presuming that once an irrevocable letter of credit is established "as regards the beneficiary," the issuer may not unilaterally cancel the credit even where the customer fraudulently induced the establishment of the credit).

Regarding the limited exceptions to an issuing bank's duty to honor drafts drawn on letters of credit, our Supreme Court has stated:

> The only exceptions to the issuer's duty to honor documents which on their face comply with the terms of the credit are those listed under G.S. 25-5-114(2). These exceptions are: (1) the failure of certain documents to conform to certain specified warranties, (2) the presentment of forged or "fraudulent" documents, and (3) "fraud in the transaction."

. . . .

. . . Given the independence of the issuer's obligation to the beneficiary, and the commercial purposes which this independent obligation serves, it would appear that an injunction should issue to enjoin payment of a draft only in those instances where there is some action by the beneficiary which vitiates the transaction between the beneficiary and the issuer.

*O'Grady,* 296 N.C. at 232-33, 250 S.E. 2d at 600-01. While *O'Grady* dealt with an injunction against honor, we note that "[t]he fraud that would justify dishonor by the issuer is the same as the fraud that would justify the customer's obtaining an injunction against honor on the ground of fraud." 7 R. Anderson, *Uniform Commercial Code* Sec. 5-114:12 at 331 n.13 (1985).

These exceptions to honor concern merely the genuineness of the documents presented for honor. *O'Grady,* 296 N.C. at 233, 250 S.E. 2d at 601. Specifically, the *O'Grady* Court found that " 'fraud in the transaction' . . . refer[s] to the beneficiary's accompanying his draft with documents or declarations which have absolutely no basis in the facts of the underlying performance." *Id.* at 234, 250 S.E. 2d at 601. As an example, the Court cited *Sztejn v. Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S. 2d 631 (1941), where a seller-beneficiary totally misrepresented the nature of goods shipped to a buyer-customer in documents presented to the issuer for the purpose of honor under the terms of a letter of credit, when in fact the seller-beneficiary had shipped fifty cases of rubbish instead of fifty cases of the goods ordered.

The *O'Grady* Court further discussed the "presentment of fraudulent documents" exception to an issuer's duty to honor. A "fraudulent document" is one "that is completely forged or drawn up without any underlying basis in fact, one that is but partly spurious or a document which has been materially altered." *Id.* at 234, 250 S.E. 2d at 601.

The Court then held that,

the knowing and intentional attachment of a guaranty letter of credit, as collateral security, to a negotiable instrument which that letter was not intended to secure, and the eventual presentation of these documents to the issuing bank for

purposes of honor of the letter of credit, would amount to a presentment of fraudulent documents under G.S. 25-5-114(2). In such a case, though the note may be valid as against other parties to the note, the documents, considered as a whole, are nonetheless fraudulent insofar as the letter of credit was not intended to secure that particular note, and the beneficiary had knowledge of this fact.

. . . .

. . . If such is found to be the case, the documents would be fraudulent in that the portion of the . . . note listing the letter of credit as collateral would have no basis in the facts of the agreement between the parties. In that case, the documents would not be those which gave rise to the establishment of credit referred to in the letter itself.

*Id.* at 234-35, 250 S.E. 2d at 601-02.

The only document required by the letter of credit to accompany the drafts was the certified statement of default. Northwestern accompanied its draft with the statement that correctly indicated the loan was in default and past due. Because there is no misstatement in this document as it reflects the underlying nature of the default, and because the letter of credit was intended to secure this particular note, given the *O'Grady* definition of the exceptions, it appears that neither exception applies. *O'Grady*, 296 N.C. at 234, 250 S.E. 2d at 601 ("[s]ince the documents in the present case, the note and notice of default, do reflect the nature of the underlying performance and default, there are no grounds here for a claim of fraud in the transaction"); *but cf. American Bell International, Inc. v. Iran*, 474 F. Supp. 420, 424 (S.D.N.Y. 1979) (recognizing that some authorities refer to "transaction" as encompassing the totality of circumstances). However, it may be argued that where a beneficiary extends a loan relying on a letter of credit which he knows was procured through fraud on the issuer, the statement of default of the underlying loan is a product of the fraud entitling the issuer to one of the exceptions. *See O'Grady*, 296 N.C. at 233, 250 S.E. 2d at 601 (holding that Section 25-5-114(2) "permits dishonor . . . in situations where the documents presented are themselves the product of some sort of fraud"). *Cf.* N.C.G.S. Sec. 25-1-203 ("Every

contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement.").

However, we need not determine whether this action would fall within one of the exceptions, since in any event, we hold the beneficiary must have known of the fraudulent procurement of the letter of credit at the time it extended credit based on the letter as collateral. *See O'Grady,* 296 N.C. at 234, 250 S.E. 2d at 601-02. While defendant requested the trial court to submit the issue of fraud to the jury, it did not request an issue submitted to the jury concerning plaintiff's knowledge of the alleged fraudulent procurement of the letter of credit. Therefore, defendant waived its right to a jury trial on this issue under Rule 49(c) of the Rules of Civil Procedure. Since the issue of knowledge of the alleged fraud was not submitted to the jury, and the trial court did not make a finding on the issue, the court is "deemed to have made a finding in accord with the judgment entered." N.C.G.S. Sec. 1A-1, Rule 49(c). *See also Petty v. City of Charlotte,* 85 N.C. App. 391, 399, 355 S.E. 2d 210, 215 (1987).

Even if defendant had proposed the issue, there was not sufficient evidence to submit it to the jury. *See Gunter v. Winders,* 256 N.C. 263, 265, 123 S.E. 2d 475, 477 (1962) (an issue "must not only arise on the pleadings, but it must be supported by competent evidence" in order to justify its submission to the jury). Defendant presented no evidence that plaintiff knew of any actual fraud, nor was there evidence that plaintiff knew of the alleged breach of a fiduciary duty by Mrs. Sheppard, assuming that she was a fiduciary in relation to NCF. The fact that Northwestern may have known she was an officer of Federal was not enough to give Northwestern knowledge of constructive fraud. In any event, all the evidence indicated Mrs. Sheppard did not have any power to approve letters of credit in her capacity as assistant secretary.

Therefore, the trial court's denial of defendant's motion for a directed verdict on the issue of fraud was not error nor was its refusal to submit the issue of fraud to the jury.

### III

The defendant made other assignments of error which are without merit. For the reasons above, the trial court committed no error in denying NCF's motion for a directed verdict on the

issue of Parnell's actual or apparent authority to issue the letter of credit. The trial court was correct in denying NCF's motion for a directed verdict on the issue of whether Northwestern was entitled to present a draft on the letter of credit and on whether fraud excused NCF's performance under the letter of credit. Finally, the trial court did not commit error in refusing to submit to the jury an issue of fraud in the procurement of the letter of credit.

No error.

Chief Judge HEDRICK and Judge MARTIN concur in the result.

Judge MARTIN concurred in this opinion prior to 31 December 1987.